**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Plaintiff, | Case No. _____ |
| v. | |
| KEYSTONE ALTERNATIVES LLC, d/b/a GoPSUrv.com; and MARK LAUER, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff The Pennsylvania State University ("Penn State"), by counsel, hereby alleges as follows for its Complaint against Defendants Keystone Alternatives LLC, d/b/a GoPSUrv.com ("Keystone Alternatives") and Mark Lauer (together with Keystone Alternatives, "Defendants"):

1.     This is an action for trademark infringement of Penn State's PSU, PENN STATE, and Nittany Lion Logo trademarks; unfair competition; cybersquatting; and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, trademark infringement under Pennsylvania law, and unfair competition under Pennsylvania common law.

2.     Penn State promotes its goods and services through a variety of valuable trademarks, including PSU (the "PSU Mark"), PENN STATE (the "PENN

STATE Mark"), and the following logo featuring the head of its Nittany Lion Mascot:



(the "Nittany Lion Logo").

3.      The PSU Mark is further used through a website that Penn State operates at the domain <psu.edu> and an athletics-focused website operated by Penn State's authorized licensee at <GoPSUsports.com>.

4.      Defendants are willfully infringing the PSU Mark by branding themselves as GoPSUrv.com and operating a website at the domain <GoPSUrv.com>.  Defendants are further infringing the PENN STATE Mark and the Nittany Lion Logo by using those Marks on its website and in advertising to promote their goods and services.  Defendants are using Penn State's trademarks solely to capitalize on Penn State's popularity and the goodwill associated with Penn State's valuable trademarks.  As a result, Penn State brings this action for federal and state trademark infringement, unfair competition, cybersquatting and trademark dilution.

**<u>The Parties</u>**

5.      Plaintiff is The Pennsylvania State University, a not-for-profit, State-related institution of higher education, created under the statutory authority of the

Commonwealth of Pennsylvania, and which operates as an instrumentality thereof. Penn State maintains a place of business at 208 Old Main, University Park, Centre County, Pennsylvania, 16802.

6.      Defendant Keystone Alternatives LLC is a limited liability company organized under the laws of Pennsylvania (Business No. 3843025), with an address of P.O. Box 173, Red Lion, PA 17356.  Keystone Alternatives does business as GoPSUrv.com.  Keystone Alternatives is operated by Mark Lauer.

7.      Defendant Mark Lauer is an individual residing at 6649 Church Rd, Felton, PA 17322.

## Jurisdiction and Venue

8.      This Court has original jurisdiction over this Complaint for infringement of a trademark, unfair competition, false advertising, and trademark dilution involving a famous mark, pursuant to 15 U.S.C. § 1121(a), as well as 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 1337(a) (Commerce Regulations); and 28 U.S.C. § 1338(b) (Trademark and Unfair Competition).

9.      This Court has jurisdiction over all pendant state law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) because all such claims are based upon the same or substantially the same conduct by Defendants.

10.     Defendants are subject to personal jurisdiction in this Court as they reside in Pennsylvania.  Defendants are further subject to the personal jurisdiction

of this Court because they have conducted, engaged in, and carried out business ventures, and committed tortious acts and other wrongs within Pennsylvania and this judicial district.

11.     The Middle District of Pennsylvania is the proper venue for this action pursuant to 28 U.S.C. § 1391(a) and (b) because Defendants reside in this judicial district and because a substantial part of the events giving rise to this action occurred in this judicial district.

## **Penn State and its Protected Trademarks**

12.     Penn State is the flagship public university of the Commonwealth of Pennsylvania.

13.     Penn State was founded in 1855 and began operating under the name "The Pennsylvania State University" in 1953.

14.     Penn State provides educational services, research, outreach, development and other related scholarly pursuits at multiple locations, within the Commonwealth of Pennsylvania, internationally, and online.  Since 1855, Penn State has grown to 24 campuses, 17,000 faculty and staff members, and over 100,000 students.

15.     Penn State is famous throughout the United States and the world for, among other things, its educational programs, athletics programs and services, and various and diverse student related services, such as entertainment services including

4

sports exhibitions, theatrical productions, and musical concerts, as well as many goods and services related to the university, ranging from apparel to food items to alumni cruises.

16.    Penn State also offers Penn State Transportation Services, a variety of transit options and transportation services featured on the Penn State website at transportation.psu.edu, including football shuttles through authorized vendors.

17.    Penn State's athletic competitions are often televised to national and sometimes international audiences, and Penn State enjoys a large fan base throughout the country that is loyal to the University and its brand.

## The PSU Mark

18.    Penn State has extensively used and promoted the mark PSU for more than four decades.  The mark PSU has no descriptive or geographic meaning; Penn State uses PSU solely as a source indicator.  As a result, the PSU Mark is famous and instantly recognizable to the consuming public of the United States and the world and became famous long before the events complained about in this Complaint.

19.    Penn State owns the two federal United States trademark registrations for PSU in connection with the following goods and services:

| Mark | Services | Reg. No. and Date | Incontestable |
|------|----------|-------------------|---------------|
| PSU | Int'l Class 9: Decorative Magnetic Stickers. | 1,276,801 | Yes |

| Mark | Services | Reg. No. and Date | Incontestable |
|---|---|---|---|
| | Int'l Class 14: Gold Charms, Silver Charms, Necklaces, Gold Stick Pins, and Silver Stick Pins.<br><br>Int'l Class 16: Notebooks, Looseleaf Binders, Notepads, Pad Holders, Writing Paper and Envelopes, Clipboards, and Decals.<br><br>Int'l Class 18: General Purpose Gym Bag.<br><br>Int'l Class 24: Washcloths and Blankets.<br><br>Int'l Class 25: Shirts, T-Shirts, Jerseys, Sweat Shirts, Jackets, Shorts, One Piece Little Girls' Cheerleader Outfits, Baby Rompers, and Hats. | May 8, 1984 | |
| PSU | Int'l Class 6: Metal novelty license plates.<br><br>Int'l Class 12: License plate frames.<br><br>Int'l Class 14: Earrings, metal key chains. | 5,544,312<br><br>August 21, 2018 | No |

| Mark | Services | Reg. No. and Date | Incontestable |
|---|---|---|---|
| | Int'l Class 18: Umbrellas, backpacks.<br><br>Int'l Class 21: Ceramic mugs, drinking glasses.<br><br>Int'l Class 25: Bras, sweaters, cardigans, tennis shirts, ponchos, raincoats, hooded sweatshirts.<br><br>Int'l Class 026: Hair bows.<br><br>Int'l Class 28: Toy stuffed animals. | | |

20.     Each of the PSU Marks is in full force and effect and have been since their respective dates of registration.  As noted in the chart above, one of the PSU Marks (U.S. Reg. No. 1,276,801) has obtained incontestable status under the Lanham Act, 15 U.S.C. § 1064, and is therefore conclusive evidence of the validity of that PSU Mark, of Penn State's registration and ownership of that PSU Mark, and of Penn State's exclusive right to use the PSU Mark in the United States.  Similarly, the remaining PSU Mark (U.S. Reg. No. 5,544,312) is *prima facie* evidence of the validity of the PSU Mark, of Penn State's registration and ownership of the PSU Mark, and of Penn State's exclusive right to use the PSU Mark in the United States.

True and correct copies of the registration certificates for the PSU Marks are attached as Exhibit A.

21.     Penn State itself and through authorized licensees owns and controls two domain names that incorporate the PSU Mark:   <psu.edu>  and <GoPSUsports.com>.  *See* Exhibit B (WHOIS information for each domain and screenshots of webpages hosted on each domain).  These domains are Penn State's primary domains for the University and its athletics programs.

22.     Penn State consistently and prominently displays and advertises the PSU Mark in connection with its goods and services in the United States and throughout the world.

23.     In addition to its registrations, Penn State enjoys common law rights in the PSU Mark through its extensive advertisement and use of that Mark in its domain name and in connection with various goods and services.  *See* Exhibit B at 14-18, Exhibit C (examples of use of PSU Mark).

24.     To protect its famous and valuable PSU Mark, Penn State actively polices for infringing and dilutive uses of PSU.

25.     Penn State's PSU Mark is inherently distinctive.  Alternatively, as a result of Penn State's longstanding use and promotion of the PSU Mark, the Mark has acquired secondary meaning (and has actually become famous under the law),

becoming widely recognized by the general consuming public as a designation identifying Penn State and its goods and services.

## The PENN STATE Mark and the Nittany Lion Logo

26.    Penn State has been using PENN STATE as a word and design mark continuously since 1908 for many goods and services.  The PENN STATE Mark designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the Mark is attached.

27.    To protect its valuable marks, Penn State has obtained numerous registrations for PENN STATE and marks incorporating PENN STATE in the United States and around the world.  Those United States registrations include U.S. Reg. No. 1,732,445 (incontestable) (PENNSTATE 1855 word mark and design covering, *inter alia*, "hotel and restaurant services … and providing sleeping, eating, and meeting accommodations for the public"); U.S. Reg. No. 1,308,610 (incontestable) (PENN STATE word mark covering, *inter alia*, "sports exhibitions" and "providing sleeping, eating, and meeting accommodations for the public"); U.S. Reg. No. 4,439,041 (PENN STATE word mark); U.S. Reg. No. 5,393,863 (PENNSTATE word mark and design, covering, *inter alia*, "conducting sports exhibitions" and "providing athletic instruction and athletic coaching"); Reg. U.S. No. 5,441,650 (PENN STATE word mark); and U.S. Reg. No. 5,766,698 (PENN STATE word mark).

28.    In addition to the goods and services covered by its PENN STATE registrations, Penn State has established common law rights in the PENN STATE Mark by using PENN STATE continuously across the United States for decades.

29.    Penn State adopted a mascot called the "Nittany Lion" in approximately 1904.  It has been using the Nittany Lion Logo shown below



for more than three decades relating to its sports teams and sporting events, as well as goods and services related to those events.

30.    To protect its rights in the Nittany Lion Logo, Penn State has obtained the following federal trademark registrations:    U.S. Reg. No. 1370866 (incontestable);  U.S. Reg. No. 4406486;  Reg. No. 5204747 (covering "Entertainment services, namely, organizing and conducting amateur intercollegiate sports competitions and athletic events; providing athletic instruction and athletic coaching"); U.S. Reg. No. 5323000; U.S. Reg. No. 5323786 (covering, *inter alia*, "Entertainment services, namely, conducting sports exhibitions and live musical concerts; Providing athletic instruction and athletic coaching"); and U.S. Reg. No. 5548988 (covering, *inter alia*, "decorative magnets" and stickers").

31.     In addition to the goods and services covered by its Nittany Lion Logo registrations, Penn State has established common law rights in the Nittany Lion Logo by using that Logo continuously across the United States for decades.

## Penn State's Uses of its Protected Marks

32.     Penn State's football program is one of the most successful sporting programs of all-time, with its games seen worldwide.  Substantially all, if not all, of the games of Penn State's team are nationally televised and watched in areas outside of the United States as well, leading to widespread recognition of the PSU Mark, the PENN STATE Mark, and the Nittany Lion Logo.

33.     The PSU Mark, the PENN STATE Mark, and the Nittany Lion Logo are frequently used by Penn State with a navy blue and white color scheme.

34.     Penn State's football stadium is one of the largest stadiums in college football.  With a seating capacity of 106,572, well over 100,000 people travel to and park near Penn State's football stadium for football games.

35.     Many of Penn State's fans travel to Penn State's campus prior to scheduled sporting events and tailgate before the event.

36.     As part of its services, Penn State offers overnight and day of game recreational vehicle (RV) parking under the PSU Mark, the Penn State Mark, and the Nittany Lion Logo.     *See* Exhibit D at 2-6 (screenshots of https://gopsusports.com/sports/2018/8/8/tickets-m-footbl-parking-html.aspx

11

advertising parking for Penn State football games).  Penn State also offers hotel services under the PSU and the PENN STATE Marks.

37.     Penn State offers attendees the opportunity to purchase a parking pass for its overnight RV lot, allowing fans to travel from out of town and tailgate with accommodations.   In addition, Penn State works with third parties to provide overflow capacity when Penn State's RV lot reaches capacity.

38.     Penn State, either directly or through authorized third parties, provides through the <GoPSUsports.com> website tailgating equipment, reserved parking spaces, parking, tables, chairs, tents, catering, accommodations and other concierge services for fans of Penn State sports teams who travel to watch Penn State sporting events in person, including parking in an overnight RV lot.  *See* Exhibit D.  Nearly all of the goods for sale under the "Gameday & Tailgate" section of Penn State's online Athletics Store feature the PENN STATE Mark and/or the Nittany Lion Logo. *See* Exhibit D at 12-31.

39.     As a result of Penn State's extensive advertising and promotion of its goods and services using the PSU Mark, the PENN STATE Mark, and the Nittany Lion Logo, and through favorable industry acceptance and recognition, the relevant consuming public have come to recognize and identify Penn State as the source of the top quality goods and services offered in connection with those trademarks.

40.     Accordingly, the PSU Mark, the PENN STATE Mark, and the Nittany Lion Logo are assets of incalculable value as identifiers of Penn State and its high quality goods and services, as well as Penn State's extensive goodwill.

### Defendants' Infringing Uses of Penn State's Trademarks

41.     Defendants Keystone Alternatives and Mark Lauer offer, advertise, and sell RV rentals and related services to football fans who are traveling to Happy Valley to attend football games.

42.     Defendants offer these goods and services at the domain <GoPSUrv.com> (the "Domain") which they also registered.   *See* Exhibit E (WHOIS page showing registration information for the domain <GoPSUrv.com>).

43.     Although Defendant Lauer's company name is "Keystone Alternatives," Defendants almost exclusively use the brand GoPSUrv.com rather than "Keystone Alternatives" to promote their goods and services, as shown below:



44.     Commercials posted to the webpage at the Domain state that "GoPSUrv is offering a full range of RV setups ready for a weekend of great tailgating," and encourage fans traveling to Penn State football games to use Defendants' goods and services.

45.     Through the Domain, the associated website, and virtually all of their branding and advertising, Defendants attempt to suggest a connection, sponsorship or affiliation with Penn State where no such affiliation exists.

46.     For example, the Domain incorporates Penn State's PSU Mark by using "PSU" prominently in the Domain address.  As shown above, Defendants' website at the Domain also uses GoPSUrv.com and GoPSUrv as their primary brand name (together, the "Infringing PSU Mark").  *See* Exhibit F (screenshots of the Domain).

47.     The Domain is virtually identical to Penn State's <GoPSUsports.com> domain, which is used for Penn State athletic programs.

48.     Defendants promote the Infringing PSU Mark and Domain extensively, and make no effort to promote their actual business name of Keystone Alternatives.

49.     Defendants also use other Penn State trademarks.  Their webpage at the Domain displays the PENN STATE Mark and the Nittany Lion Logo in numerous images and videos that Defendants have posted of the RVs they offer to rent to fans ("the Infringing PENN STATE & Logo Marks").

50.    The Infringing PENN STATE & Logo Marks appear prominently in the following photographs, which are currently located on the GoPSUrv webpage:





*See* Exhibit F.

51.    The webpage at the Domain also links to the Penn State football schedule.  *See* Exhibit F at 3, 6-8.

52.    By using Penn State's protected trademarks, logos, and trade dress on the webpage at the Domain, Defendants are further creating confusion that the goods and services offered through the Domain are affiliated with or sponsored by Penn State.

53.    The top banner of the Domain's webpage displays GoPSUrv.com in the following format, which highlights the infringing use of "PSU" by emphasizing those letters in larger text using a different font in a navy blue color highly similar to the navy blue color scheme used by Penn State:



54.    Defendants also advertise their goods and services using the Domain and the Infringing PSU Mark in other media.

55.    For instance, Defendants operate a Facebook page under the handle @goPSUrv, and that page prominently displays the Domain name and Infringing PSU Mark. *See* Exhibit G (screenshots of Defendants' Facebook page).

56.    The name Keystone Alternatives is not used on Defendants' Facebook page.

57.    On November 15, 2019, Defendants ran an advertisement in the Centre Daily Times for a tailgate party, which prominently featured the Infringing PSU

16

Mark as shown in Paragraph 53 supra.  *See* Exhibit H (image of Defendants' advertisement).  This advertisement states that the tailgate party is "Presented by goPSUrv.com" and does not reference Keystone Alternatives.

58.   Defendants have also erected a large banner on the side of the road on the main highway leading into State College, Pennsylvania, featuring the Infringing PSU Mark.  *See* Exhibit I (images of banner).  The name Keystone Alternatives does not appear on the banner.

59.   Defendants' use of the Infringing PSU Mark and the Domain is likely to cause confusion among customers because it incorporates Penn State's famous PSU Mark and because the goods and services sold by Defendants in connection with the Domain and Infringing PSU Mark overlap with and/or are closely related to goods protected by Penn State's well-established and famous trademarks.

60.   Although the Domain incorporates minor changes to the PSU Mark and Penn State's own <GoPSUsports.com> domain, the generic terms "Go" and "RV," and the generic top-level domain ("gTLD") .com, do little to mitigate the risk of confusion.

61.   Defendants' use of the Infringing Penn State & Logo Marks is likely to cause confusion among customers because Defendants are using Marks identical to Penn State's PENN STATE Mark and Nittany Lion Logo, in connection with goods

and services that overlap with and/or are closely related to the goods and services protected by Penn State's well-established trademarks.

62.     Penn State has not—at any time, or for any purpose—authorized Defendants' use in commerce, either directly or indirectly, of its valuable PSU Mark, PENN STATE Mark, or Nittany Lion Logo in connection with Defendants' goods and services.  Penn State has no affiliation or connection with Defendants.

63.     Defendants are using the Domain and the Infringing PSU Mark to divert Internet users to their own commercial website, displaying services which, due to the Infringing PSU Mark, appear to be affiliated with Penn State and Penn State athletics.

64.     Upon information and belief, when Defendants registered the Domain, they were aware of the PSU Mark and that Penn State's official athletics webpage was at the URL <GoPSUsports.com>.  Penn State's PSU Mark was famous prior to the start of Defendants' infringement.  By selecting the Domain for registration, which is so close in appearance to Penn State's own athletics-program domain and PSU Mark, Defendants' purpose was to divert web traffic from the hundreds of thousands of people seeking accommodations for traveling to Penn State's athletic events, for Defendant's financial gain.

65.     Upon information and belief, Defendant Mark Lauer is the moving, active, and conscious force behind the use of the Infringing PSU Mark, the

Infringing PENN STATE & Logo Marks, and the use and registration of the Domain.

66.     Defendants' egregious misuse of the Infringing PSU Mark and the Domain, and of the PENN STATE & Logo Marks has caused, or is likely to cause, great and irreparable injury to Penn State, including irreparable injury to the goodwill and reputation embodied in those marks, for which Penn State has no adequate remedy at law.

67.     Upon information and belief, Defendants will continue to commit the acts complained of unless enjoined.

68.     Upon information and belief, Defendants' acts were deliberately and intentionally carried out in bad faith, or with a reckless disregard for or willful blindness to Penn State's rights in the PSU Mark, the PENN STATE Mark, and the Nittany Lion Logo for the purpose of trading on Penn State's reputation embodied in those marks and diluting those marks.

69.     The willful nature of Defendants' unlawful acts renders this an "exceptional case," entitling Penn State to an award of profits, treble damages, and attorneys' fees under at least 15 U.S.C. § 1117(a).

**COUNT I**
**Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)**
**(All Marks)**

70.    Plaintiff Penn State hereby incorporates by reference paragraphs 1-69 as though expressly stated herein.

71.    Defendants are using the Domain and Infringing PSU Mark in commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods and services that do not originate with and are not sponsored by or affiliated with Penn State.

72.    Defendants are applying the Infringing PSU Mark in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods and services that do not originate with, and are not sponsored by or affiliated with, Penn State.

73.    Defendants' actions, including without limitation selling goods and services in trademark classes registered by Penn State or within the natural zone of expansion of those classes and the goods and services within, are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services offered by Defendants in connection with the Infringing PSU Mark, in that customers and potential customers are likely to believe that those goods and services offered by Defendants in connection with the Domain and Infringing PSU Mark are provided by, sponsored by, approved by, licensed by, affiliated or associated with,

or in some other way legitimately connected to Penn State, when there is no such relationship.

74.     Defendants are using the Infringing PENN STATE & Logo Marks in commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods and services that do not originate with and are not sponsored by or affiliated with Penn State.

75.     Defendants are applying the Infringing PENN STATE & Logo Marks in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods and services that do not originate with, and are not sponsored by or affiliated with, Penn State.

76.     Defendants' actions, including without limitation selling goods and services in trademark classes registered by Penn State or within the natural zone of expansion of those classes and the goods and services within, are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services offered by Defendants in connection with the Infringing PENN STATE & Logo Marks, in that customers and potential customers are likely to believe that those goods and services offered by Defendants in connection with the Infringing PENN STATE & Logo Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

21

77.   As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

78.   The likely confusion, mistake, or deception caused by Defendants is willful and is in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
## <u>Federal Unfair Competition & False Designation of Origin</u>
## <u>(15 U.S.C. § 1125(a))</u>
## (All Marks)

79.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-78 as though expressly stated herein.

80.   Defendants' use of the Domain and the Infringing PSU Mark constitute use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services provided by Defendants, in that customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

81.   Defendants' use of the Infringing PENN STATE & Logo Marks constitute use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services provided by Defendants, in that customers

and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

82.     As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

83.     The likely confusion, mistake, or deception caused by Defendants is willful and is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III
## Cybersquatting Under the Lanham Act (15 U.S.C. § 1125(d))
### (The Domain and Infringing PSU Mark)

84.     Plaintiff Penn State hereby incorporates by reference paragraphs 1-83 as though expressly stated herein.

85.     Upon information and belief, Defendants registered <GoPSUrv.com>, which is confusingly similar to, and dilutive of, the famous PSU Mark, with a bad faith intent to profit from the goodwill, reputation, and fame of Penn State's Mark.

86.     The PSU Mark was distinctive and famous at the time Defendants registered the Domain <GoPSUrv.com>.

87.     Defendants were fully aware of Penn State's rights in the famous PSU Mark prior to, and at the time of, its registration of the Domain <GoPSUrv.com>.

88.     Defendants' registration of the <GoPSUrv.com> Domain violates the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), Lanham Act § 43(d), and was and is done willfully, in bad faith, and without any legitimate business purpose.

89.     Defendants' willful and intentional violation of the Anticybersquatting Consumer Protection Act entitles Penn State to statutory damages of up to $100,000 pursuant to the Lanham Act, 15 U.S.C. § 1117(d).

90.     As a direct and proximate result of the likely confusion, mistake, or deception Penn State has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

## COUNT IV
## Federal Trademark Dilution (15 U.S.C. § 1125(c))
### (The Domain and Infringing PSU Mark)

91.     Plaintiff Penn State hereby incorporates by reference paragraphs 1-90 as though expressly stated herein.

92.     The PSU Mark is a famous trademark within the meaning of 15 U.S.C. § 1125(c) and became famous before Defendants began using the Infringing PSU Mark as part of the Domain.  The PSU Mark is advertised and used extensively throughout the United States and is highly recognized by the trade and consuming public.  Further, Penn State actively polices the use of the PSU Mark by third parties.

93.     Defendants are engaged in commercial use of the Infringing PSU Mark.

94.     Defendants' actions are disparaging and damaging and are likely to cause dilution of the PSU Mark through, at the very least, blurring and tarnishing.

95.     Defendants' actions are likely to dilute by blurring the PSU Mark by impairing the distinctiveness of that Mark.

96.     Defendants' actions are likely to dilute by tarnishing the PSU Mark by, at least, using the Infringing PSU Mark to sell goods that do not live up to the high standards set for goods and services offered under the PSU Mark.

97.     As a result of Defendants' likely dilution, Penn State has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendants have been and will continue to be unjustly enriched.

98.     Upon information and belief, Defendants' dilution of the PSU Mark is and was willful.

99.     The likely dilution of the PSU Mark caused by Defendants violates section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**COUNT V**
**Trademark Dilution Under 54 Pa. C.S.A. § 1124**
**(The Domain and Infringing PSU Mark)**

100.    Plaintiff Penn State hereby incorporates by reference paragraphs 1-99 as though expressly stated herein.

101.    This claim is for dilution of trademarks and injury to business or reputation under 54 Pa. C.S.A. § 1124.

102.   The PSU Mark is a famous mark in the Commonwealth of Pennsylvania within the meaning of 54 Pa. C.S.A. § 1124 and were famous prior to the date of Defendants' adoption and use of the Infringing PSU Mark.

103.   Defendants' conduct, as described in this Complaint, is diluting and will dilute the PSU Mark, thereby lessening the capacity of that Mark to identify and distinguish goods and services marketed and sold by Penn State under the PSU Mark.

104.   On information and belief, Defendants' acts of trademark dilution have been done willfully and deliberately, and Defendants have profited and been unjustly enriched by sales that Defendants would not otherwise have made but for its unlawful conduct.

105.   Defendants' acts described above have caused injury and damages to Penn State, and have caused irreparable harm to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

## COUNT VI
## Common Law Trademark Infringement and Unfair Competition
### (All Marks)

106.   Plaintiff Penn State hereby incorporates by reference paragraphs 1-105 as though expressly stated herein.

107.   This cause of action arises under the Commonwealth of Pennsylvania's common law of trademark infringement and unfair competition.

108.   Defendants' use of the Infringing PSU Mark constitutes common law trademark infringement and unfair competition in violation of common law.

109.   Defendants' use of the Infringing PENN STATE & Logo Marks constitutes common law trademark infringement and unfair competition in violation of common law.

110.   On information and belief, Defendants' acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendants have profited and been unjustly enriched by sales that Defendants would not otherwise have made if not for its unlawful conduct.

111.   Defendants' willful and deliberate acts described above have caused injury and damages to Penn State, and have caused irreparable injury to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

**WHEREFORE**, Penn State prays for judgment against Defendants as follows:

A.      Preliminarily and permanently enjoining and restraining Defendants, its directors, members, officers, agents, servants, employees, parents, subsidiaries,

affiliates, and all persons in active concert or participation with, through, or under any of them, at first during the pendency of this action and thereafter perpetually:

    i.    from committing any acts of trademark infringement, trademark dilution, cybersquatting, and unfair competition, and from implying a false designation of origin or a false description or representation with respect to the PSU Mark, the PENN STATE Mark, and/or the Nittany Lion Logo;

    ii.    from using in any manner packaging, labels, signs, literature, display cards, Internet website, or other packaging, advertising, or promotional materials, or other materials the Infringing PSU Mark, the Infringing PENN STATE & Logo Marks, or any other marks, words, or names that are confusingly similar thereto;

    iii.    from making any statements on promotional materials or advertising for its goods or services that are false or misleading as to source or origin or affiliation with, sponsorship by, or connection to Penn State; and

    iv.    from using any designation that is likely to disparage, tarnish or dilute the distinctive quality of the PSU Mark.

B.  Requiring that Defendants deliver up to Penn State any and all containers, signs, packaging materials, printing plates, and advertising or promotional

materials and any materials used in the preparation thereof, which in any way unlawfully use or make reference to the Infringing PSU Mark, any of Penn State's PSU Mark, or the Infringing PENN STATE & Logo Marks.

C. Requiring that Defendants, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon Penn State's counsel a written report under oath setting forth details of the manner in which Defendants have complied with the Court's order pursuant to paragraphs A through B above.

D. Requiring Defendants to account and pay over to Penn State all damages sustained by Penn State as a result of Defendants' willful infringement and unfair competition, including Penn State's actual damages, disgorgement of Defendants' profits, Penn State's attorney's fees and costs, and ordering that the amount of damages awarded Penn State be increased three times the amount thereof pursuant to 15 U.S.C. §§ 1117(a) and 1125.

E. Ordering that Penn State recover the costs of this action, together with reasonable attorney's fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

F. Ordering that Penn State be awarded statutory damages of up to $100,000 pursuant to 15 U.S.C. § 1117(d) for Defendants' bad faith registration of the Domain <GoPSUrv.com>.

29

G.  Ordering Defendants to transfer to Penn State any domain names that are confusingly similar to the PSU Mark or any other of Penn State's trademarks, including but not limited to <GoPSUrv.com>.

H.  Awarding Penn State such other and further relief as this Court deems just and proper.

Dated this 27th day of November, 2019.

Respectfully submitted,

By: /s/ Megan S. Haines
Megan S. Haines, Esquire
Pa. I.D. No. 203590
MCGUIREWOODS LLP
Tower Two Sixty – Suite 1800
260 Forbes Avenue
Pittsburgh, PA 15222
(412) 667-6000
(412) 667-6050
E-mail: mhaines@mcguirewoods.com

Lucy Jewett Wheatley (*Pro Hac Vice* to be submitted)
Claire Hagan Eller (*Pro Hac Vice* to be submitted)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com
Email:  celler@mcguirewoods.com

*Attorneys for The Pennsylvania State University*