# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | : : | |
| Plaintiff | : : | No. 1:19-cv-02039 |
| v. | : : | (Judge Kane) |
| KEYSTONE ALTERNATIVES LLC d/b/a GOPSURV.COM and MARK LAUER, | : : : : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Defendant Keystone Alternatives LLC d/b/a GoPSURV.com ("GoPSURV.com" or "Keystone") and Defendant Mark Lauer ("Defendant Lauer") (collectively "Defendants")' motion to dismiss (Doc. No. 14) Plaintiff The Pennsylvania State University ("Plaintiff" or "Penn State")'s complaint (Doc. No. 1) for failure to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion will be denied.

## I. BACKGROUND

### A. Procedural Background

Plaintiff initiated the above-captioned action on November 27, 2019 by filing a complaint in this Court asserting claims against Defendants for trademark infringement (Count I), unfair competition (Count II), cybersquatting (Count III), and trademark dilution (Count IV) in violation of the Lanham Act, 15 U.S.C. § 1051 et seq. (Doc. No. 1.) The complaint also asserted a claim for trademark dilution (Count V) under Pennsylvania law and a claim for common law trademark infringement and unfair competition (Count VI). (Id.) Defendants filed the instant motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on December 23,

2019. (Doc. No. 14.) Having been fully briefed (Doc. Nos. 15, 22, 26), the motion is ripe for disposition.

B. **Factual Background** [1]

Plaintiff is an institution of higher education that was created by and operates as an instrumentality of the Commonwealth of Pennsylvania. (Doc. No. 1 ¶ 5.) Plaintiff's designated place of business is located at 208 Old Main, University Park, Centre County, Pennsylvania, 16802. (Id.) Plaintiff owns two federal trademark registrations for the mark "PSU." (Id. ¶ 19.) Plaintiff additionally owns and controls two internet domain names that incorporate the PSU mark. (Id. ¶ 21.) Plaintiff also "has obtained numerous registrations for PENN STATE and marks incorporating PENN STATE in the United States and around the world." (Id. ¶ 27.) Further, Plaintiff has federal trademark registrations to protect its rights in a logo of its mascot, the "Nittany Lion Logo." (Id. ¶¶ 29-30.)

Plaintiff alleges that Defendants, in the course of business, have infringed Plaintiff's registered trademarks. (Id. ¶¶ 41-69.) Specifically, Plaintiff alleges that Defendants incorporated the PSU mark into their internet domain, registered as <goPSUrv.com> (id. ¶¶ 42, 46), that Defendants "almost exclusively use the brand GoPSUrv.com rather than 'Keystone Alternatives' to promote their goods and services" (id. ¶ 43), and that "[t]hrough the [d]omain, the associated website, and virtually all of their branding and advertising, Defendants attempt to suggest a connection, sponsorship[,] or affiliation with Penn State where no such affiliation exists" (id. ¶ 45). Plaintiff alleges that Defendants advertise in other media also using the PSU mark. (Id. ¶¶ 54-58.) Plaintiff further alleges that Defendants use Plaintiff's other trademarks on

---

[1] The following factual background is taken from the allegations of Plaintiff's complaint (Doc. No. 1).

2

their webpage and in advertising. (Id. ¶¶ 49, 52.) Plaintiff asserts that Defendants' use of its trademarks "has caused, or is likely to cause, great and irreparable injury to Penn State, including irreparable injury to the goodwill and reputation embodied in those marks." (Id. ¶ 66.)

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions set forth as factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the Third Circuit Court of Appeals has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted). A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See

Iqbal, 556 U.S. at 678. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In evaluating a motion to dismiss, a court may generally only consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

Defendants do not argue that Plaintiff has inadequately pleaded any of the claims in its complaint; instead, the instant motion is based primarily on Defendants' affirmative defenses. (Doc. No. 15 at 2-4.) Specifically, Defendants assert that Plaintiff's claims: (1) fail under the doctrine of nominative fair use; (2) fail under the doctrine of laches; and (3) are improperly asserted against Defendant Lauer.[2] (Id.) The Court will address each argument in turn.

### A. Applicability of the Doctrine of Nominative Fair Use (Counts I, II, IV, V, VI)

#### 1. Applicable Legal Standard

Nominative fair use is an affirmative defense to claims of trademark infringement. See Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 228 (3d Cir. 2005). Within the Third Circuit, courts apply a two-step approach when evaluating a nominative fair use defense. See Commerce Bancorp, LLC v. Hill, No. 08-cv-5628, 2010 WL 2545166, at *14 (D.N.J. June 18, 2010) (citing id. at 222). At the first step, "the primary inquiry is whether the defendant's use of the mark is likely to cause confusion." See Pierre & Carlo, Inc. v. Premier Salons, Inc.,

---

[2] Defendants further assert that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims if the Court is inclined to dismiss Plaintiff's federal claims. As the Court will not dismiss Plaintiff's federal claims at this time, the Court does not reach this argument.

4

713 F. Supp. 2d 471, 483 (E.D. Pa. 2010) (citing Century 21, 425 F.3d at 222). "[T]he burden then shifts to defendant to show that its nominative use of plaintiff's mark is nonetheless fair." Century 21, 425 F.3d at 222. At the second step, a court considers:

> (1) Is the use of the plaintiff's mark necessary to describe both plaintiff's product or service and defendant's product or service? (2) Is only so much of the plaintiff's mark used as is necessary to describe plaintiff's products or services? (3) Does the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services?

See id. at 232. "If each of these questions can be answered in the affirmative, the use will be considered a fair one, regardless of whether likelihood of confusion exists." Id.

### 2. Arguments of the Parties

Defendants argue that "purchase and use of the Penn State garbage can and bumper stickers constitutes nominative fair use as Defendants use the marks solely for the purpose for which [the items] were sold by Plaintiff." (Doc. No. 15 at 10.) Defendants assert that "[t]he fact that Defendants have purchased Penn State memorabilia sold by Penn State and used Penn State bumper stickers to celebrate Penn State as an institution is not trademark infringement." (Id.) Plaintiff maintains that Defendants' arguments misstate Plaintiff's allegations, which primarily contend that "Defendants use the infringing GoPSUrv and GoPSUrv.com marks as their own brand name." (Doc. No. 22 at 6.); (Doc. No. 1 ¶ 46.) Further, Plaintiff argues that a nominative fair use defense is premature at this stage of the litigation and cannot be decided on a motion to dismiss.[3] (Id.)

---

[3] Plaintiff additionally argues that Defendants cannot prove fair use as a matter of law. (Doc. No. 22 at 8-10.) As the Court agrees with Plaintiff that consideration of Defendants' fair use defense is premature at this juncture, the Court declines to evaluate Plaintiff's argument on the merits of Defendants' affirmative defense.

5

### 3. Whether the Court Should Dismiss Plaintiff's Claims Under the Doctrine of Nominative Fair Use

Upon review of the parties' arguments and the applicable law, the Court agrees with Plaintiff that Defendants' nominative fair use defense is premature at this stage of the litigation. District courts within the Third Circuit regularly decline to consider nominative fair use on a motion to dismiss because the analysis requires factual development.[4] See, e.g., Microsoft Corp. v. Softicle.com, No. 16-cv-2762, 2017 WL 5517379, at *5 (D.N.J. Sept. 29, 2017) (denying motion to dismiss because evaluation of a fair use defense is fact intensive); Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc., 24 F. Supp. 3d 451, 458 (E.D. Pa. 2014) (denying motion to dismiss and noting that consideration of a nominative fair use defense requires "development of the factual record."); Amerigas Propane, L.P. v. Opinion Corp., No. 12-cv-713, 2012 WL 2327788, at *7 (E.D. Pa. June 19, 2012) (declining to consider a fair use defense because "it would be premature to make any findings with respect to nominative fair use without the benefit of discovery."). Further, the Court notes that, despite ostensibly asserting a fair use defense to the majority of Plaintiff's claims, Defendants make no argument regarding the potential applicability of the fair use defense to Defendants' alleged use of Plaintiff's mark in its website address, in advertisements, or on its social media. (Doc. No. 1 ¶¶ 41-49, 52-69.); (Doc. No. 15 at 6-11.) Therefore, even if the Court were inclined to evaluate Defendants' fair use defense at this time, it would be unable to conduct any analysis relevant to the majority of the allegations in the complaint. Accordingly, the Court finds that any analysis of Defendants'

---

[4] Defendants' claim that "courts regularly dismiss trademark infringement claims under Rule 12(b)(6) on the basis of nominative fair use" relies exclusively on authority from outside this Circuit. (Doc. No. 15 at 9-10) (collecting cases).

affirmative defense of nominative fair use is premature and will therefore deny Defendants'

motion to dismiss Plaintiff's complaint on this ground.[5]

### B. The Applicability of the Doctrine of Laches (All Counts)

#### 1. Applicable Legal Standard

The doctrine of laches applies to bar claims where there is: "(1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay." See Santana Prods. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 138 (3d Cir. 2005) (citing Univ. of Pittsburgh v. Champion Prods., 686 F.2d 1040, 1044 (3d Cir. 1982)). Once the statute of limitations has run, "the defendant 'enjoys the benefit of a presumption of inexcusable delay and prejudice.'" See id. (citing EEOC v. A&P, 735 F.2d 69, 80 (3d Cir. 1984)). A plaintiff can rebut the presumption of laches "by showing that its delay was excusable and that its delay did not prejudice the defendant." See id. at 139-140 (collecting cases). A plaintiff can also defeat laches through a showing that the defendant has unclean hands. See United States v. One Toshiba Color Television, 213 F.3d 147, 159 (3d Cir. 2000) (stating that "insofar as it considers the doctrines of equity, the [d]istrict [c]ourt will also have to consider whether the party asserting the defense of laches has clean hands.")

---

[5] Defendants additionally argue that they are protected from trademark infringement liability due to the doctrine of implied license because they "are using the garbage can, magnet, and sticker only for the purposes which Plaintiff intended these products to be used" and therefore "have an implied license from Plaintiff to use the products as Plaintiff intended." (Doc. No. 15 at 11.) The Court finds this argument unrelated to the claims at issue. A plain reading of Plaintiff's complaint indicates that Plaintiff's claims are premised on Defendants' alleged use of Plaintiff's trademarks, in particular the "PSU" mark in Defendants' website domain name, on Defendants' social media, and in advertising. (Doc. No. 1 ¶¶ 41-49, 52-69.) The Court does not read the complaint to indicate that Plaintiff alleges trademark infringement based on Defendants' use of legally purchased memorabilia.

In order to determine the most appropriate statute of limitations for laches purposes, a court should look to the "most analogous statute of limitation." See Santana, 401 F.3d at 135; see also Kaufhold v. Caiafa, 872 F. Supp. 2d 374, 379 (D.N.J. 2012). As the Lanham Act does not include a specific statute of limitations, the Third Circuit has found that the most analogous state claim for trademark infringement actions in Pennsylvania would be a claim under the Unfair Trade Practices and Consumer Protection Law, which includes a six-year statute of limitations. See Santana, 401 F.3d at 137 (noting that "[t]he UTPCPL is the most analogous state cause of action that would encompass all claims brought under § 43(a) of the Lanham Act.").[6]

At a motion to dismiss stage, a court may consider the defense of laches only where "[it] is clear on the face of the complaint" and "where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar." See Kaufhold, 872 F. Supp. 2d at 380 (quoting Solow Bldg. Co., LLC v. Nine West Group, Inc., No. 00-7685, 2001 WL 736794, at *3 (S.D.N.Y. June 29, 2001)). Where there exist "disputed issues of fact" or "undecided questions of law," it is inappropriate to rule on the merits of the defense on a motion to dismiss. See Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 363 (3d Cir. 1983).

### 2. Parties' Arguments

Defendants argue that the exhibits they have attached to the instant motion show "knowledge that Penn State had of GoPSURV.com's activities using documentation from Penn

---

[6] Defendants assert that there is a "four-year statute of limitations period for trademark actions." (Doc. No. 15 at 14.) Defendants mistakenly cite to a California case which applies the relevant statute of limitations for state trademark claims under California law, which is four years. (Id.) (citing Miller v. Glenn Miller Prods., 318 F. Supp. 2d 923, 941 (C.D. Cal. 2004)). As noted, the relevant statute of limitations under analogous Pennsylvania law is six years. See Santana, 401 F.3d at 137.

8

State itself."[7] (Doc. No. 15 at 15.) Defendants assert that a "relationship with Penn State began in 2010" and that because "Penn State knew or should have known of Defendants' allegedly infringing use of its marks in 2010 and the laches period has long expired." (Id. at 16.) Further, Defendants contend the Court may consider these exhibits at this time because "the undisputed documents which Defendants have attached to the present [m]otion are integral to Plaintiff's claims." (Doc. No. 26 at 2.) Plaintiff argues that the Court may not consider the documents submitted by Defendants at the motion to dismiss stage and that Defendants' laches defense is premature. (Doc. No. 22 at 11-16.) Further, Plaintiff argues that "even if the laches period is clear on the face of the [c]omplaint (which it is not here), the claim is not definitively barred" because "there is a rebuttable presumption wherein plaintiff can still obtain relief." (Id. at 14.) Plaintiff contends that "even if laches did apply, [Plaintiff] would be entitled to discovery on [the defenses of] excusable delay, prejudice, and unclean hands." (Id.)

### 3. Whether the Court Should Dismiss Plaintiff's Claims Under the Doctrine of Laches

The Court agrees with Plaintiff that ruling on Defendants' laches defense would be premature at this stage of litigation. As noted, a court may consider this defense on a motion to dismiss only where the defense is clear on the face of the complaint. See Kaufhold, 872 F. Supp. 2d at 380. Further, "disputed issues of fact" or "undecided questions of law," make it inappropriate to rule on the merits of the defense at a motion to dismiss stage. See Compagnie, 723 F.2d at 363. Upon review of the Plaintiff's complaint, the Court is unpersuaded that the defense of laches is clear on the face of the complaint. Further, the briefing on this matter

---

[7] According to Defendants, the attached exhibits were produced to Plaintiff and a panel during arbitration proceedings before the National Arbitration Forum in the summer of 2019. (Doc. No. 15 at 3 n.3.) Defendants assert that these documents are therefore "undisputed[ly] authentic records" that the Court may properly consider at a motion to dismiss stage. (Id.)

9

indicates that the facts related to what Plaintiff knew or should have known about Defendants' activities and when are highly disputed. Accordingly, the Court finds that Defendants' affirmative defense of laches is premature and will therefore deny Defendants' motion to dismiss Plaintiff's complaint on this ground.[8]

### C.     Whether Defendant Lauer is a Proper Party

#### 1.     Applicable Legal Standard

There are two ways in which courts impose liability on corporate officers: (1) by piercing the corporate veil, and (2) under a participation theory of liability. See Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978). Generally, a court will pierce the corporate veil and hold the owner of a corporation liable when necessary to "'prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" See Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (quoting Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967)). In considering whether to pierce the corporate veil, a court must examine several factors, including:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of [the] debtor corporation, siphoning of funds from the

---

[8] As noted, Defendants argue that the Court should consider exhibits attached in support of the instant motion to find that Plaintiff and Defendants have maintained a relationship for several years. (Doc. No. 15 at 14-19.) However, the Court is unpersuaded that it may properly consider Defendants' submissions without converting Defendants' motion to dismiss to a motion for summary judgment. Extrinsic evidence may only be considered on a motion to dismiss where that evidence is "integral to or explicitly relied upon in the complaint." See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Although Defendants contend that the documents at issue "are integral to Plaintiff's claims" (Doc. No. 26 at 2), they misapply the relevant doctrine. As one district court within the Third Circuit has explained, "[i]t is not enough that a putatively integral document be critical for an affirmative defense, or bear on an essential element of the claim. The rule is applied when the claim would not exist but-for the existence of the document." See Dix v. Total Petrochemicals USA, Inc., No. 10-cv-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011) (collecting cases). Therefore, the Court will not consider Defendants' exhibits at this time, but will review them if presented appropriately on summary judgment.

10

> debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a façade for the operations of the dominant stockholder.

See id. (citing Am. Bell Inc. v. Fed'n of Tel. Workers of Pa., 736 F.2d 879, 886 (3d Cir. 1984)). Under the participation theory, Pennsylvania law recognizes that corporate officers can be held individually liable for personal participation in tortious conduct. See Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983) (citing Donsco, Inc., 587 F.2d at 606). Corporate officers may not be held liable for "mere nonfeasance," but may be liable where the officer "participates in the wrongful acts." See id.

### 2. Parties' Arguments

Defendants argue that Defendant Lauer cannot be held liable as a defendant because Plaintiff has not alleged "facts showing that [Defendant] Lauer has done anything to pierce the corporate veil under Pennsylvania law." (Doc. No. 15 at 13.) Defendants further argue that under a participation theory, Plaintiff "offers no facts to support any plausible theory that [Defendant] Lauer individually engaged in any tortious or unlawful conduct" and instead "makes only the bare-bones, conclusory assertion that [Defendant] Lauer did commit acts in connection with Keystone Alternatives." (Doc. No. 26 at 7-8.) Plaintiff contends that "principles related to corporate veil piercing are misplaced" because "Defendant Lauer's liability is based on his own wrongful actions, not on his position as the owner of Keystone Alternatives." (Doc. No. 22 at 19.) Plaintiff argues that Defendant Lauer has been properly named as a defendant because the complaint alleges that he "participated in the conduct giving rise to Penn State's claims." (Id. at 20.)

### 3. Whether the Court Should Dismiss Defendant Lauer from the Action

Upon review of the parties' arguments and the applicable law, the Court finds that Plaintiff's complaint contains sufficient allegations against Defendant Lauer to preclude his dismissal at this time. As an initial matter, the Court notes that individual corporate officers are regularly found to be proper defendants in Lanham Act cases under a participation theory of liability.[9] See, e.g., Donsco, Inc., 587 F.2d at 606 (finding corporate officer liable where the officer "authorized and approved" the actions at issue in the case); Rosenbaum & Assocs., P.C. v. Morgan & Morgan, No. 17-cv-4250, 2018 WL 327167 at *7-9 (E.D. Pa. Jan. 8, 2018) (declining to dismiss claims against corporate officers who affirmatively made misleading statements or authorized and approved false advertising); Gentex Corp. v. Abbott, 978 F. Supp. 2d 391, 403-404 (M.D. Pa. 2013) (declining to dismiss claims against corporate officer because a complaint alleging trademark infringement "requires only such allegations that show [the officer] participated in the wrongful acts" (emphasis in original)); Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 618 (E.D. Pa. 2010) (declining to dismiss claims against corporate officers alleged to have used the infringing marks).

A review of the complaint shows that Plaintiff alleges that: (1) "Keystone Alternatives is operated by Mark Lauer" (Doc. No. 1 ¶ 6); (2) that Defendant Lauer, along with Keystone Alternatives "offer[s], advertise[s], and sell[s] RV rentals and related services" (id. ¶ 41); and (3) that "[u]pon information and belief, Defendant Mark Lauer is the moving, active, and conscious force behind the use of the Infringing PSU Mark, the Infringing PENN STATE & Logo Marks,

---

[9] As Plaintiff makes clear that Defendant Lauer's potential liability is premised solely on a participation theory and not on principles of piercing the corporate veil (Doc. No. 22 at 18-20), the Court will only assess whether Plaintiff has sufficiently alleged Defendant Lauer's participation in the acts at issue.

and the use and registration of the domain" (id. ¶ 65). These allegations specifically naming Defendant Lauer are in addition to Plaintiff's consistent assertions throughout the complaint that the allegedly infringing acts were committed by Defendants collectively. (Doc. No. 1.) This Court has previously found similar allegations sufficient to state a claim against a corporate officer. See Gentex Corp., 978 F. Supp. 2d at 403 (stating that "[Defendant Corporation] further argues that Plaintiff's allegations against [corporate officer] as an individual are insufficient because they does [sic] not distinguish between the alleged acts of [Defendant Corporation] and those of [corporate officer] . . . no such level of specificity is required to state a claim against [corporate officer] for participating in the causes of action alleged: trademark infringement, unfair competition, and unjust enrichment.") Additionally, Defendant Lauer is listed as the registrant of the allegedly infringing internet domain name.[10] (Doc. No. 1-6 at 2.) Contrary to Defendants' contentions that "[t]he claim against [Defendant] Lauer individually is without evidentiary support" (Doc. No. 26 at 6), the Court's reading of the complaint allows it to draw a reasonable inference that Defendant Lauer is liable for the conduct alleged. See Iqbal, 556 U.S. at 678. Accordingly, the Court will deny Defendants' motion to dismiss Defendant Lauer from this action.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 14) will be denied in its entirety. An Order consistent with this Memorandum follows.

---

[10] In evaluating a motion to dismiss, a court may consider allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Benefit Guar. Corp., 998 F.2d at 1196.