**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE PENNSYLVANIA STATE UNIVERSITY,** | : | |
| | : | |
| Plaintiff | : | **No. 1:19-cv-02039** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **KEYSTONE ALTERNATIVES LLC d/b/a GOPSURV.COM and MARK LAUER,** | : | |
| | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court is Plaintiff The Pennsylvania State University ("Plaintiff" or "Penn

State")'s motion to dismiss Count IV of counterclaims brought against it by Defendant Keystone

Alternatives LLC d/b/a GoPSURV.com ("GoPSURV.com" or "Keystone") and Defendant Mark

Lauer ("Defendant Lauer") (collectively "Defendants") for failure to state a claim for which

relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 33.)  For

the reasons that follow, Plaintiff's motion will be granted.

## I.      BACKGROUND

### A.      Procedural Background

Plaintiff initiated the above-captioned action on November 27, 2019 by filing a complaint

in this Court asserting claims against Defendants for trademark infringement (Count I), unfair

competition (Count II), cybersquatting (Count III), and trademark dilution (Count IV) in

violation of the Lanham Act, 15 U.S.C. § 1051 et seq.  (Doc. No. 1.)  The complaint also

asserted a claim for trademark dilution (Count V) under Pennsylvania law and a claim for

common law trademark infringement and unfair competition (Count VI).  (Id.)  Defendants filed

a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on December 23, 2019

(Doc. No. 14), which the Court denied on March 5, 2020 (Doc. Nos. 28, 29).  Defendants subsequently filed an answer to Plaintiff's complaint on March 30, 2020 (Doc. No. 32), asserting counterclaims for cyberpiracy (Count I), reverse domain name hijacking (Count II), and tortious interference with contractual relations (Count IV), and seeking a declaratory judgment that Defendants' domain name GoPSUrv.com does not violate the Lanham Act (Count III).  In the instant motion, Plaintiff seeks to dismiss only Count IV of Defendants' counterclaims alleging tortious interference.  (Doc. No. 33.)  Having been fully briefed (Doc. Nos. 34, 36, 37), the motion is ripe for disposition.

### B.      Factual Background [1]

Plaintiff is an institution of higher education that was created by and operates as an instrumentality of the Commonwealth of Pennsylvania.  (Doc. No. 1 ¶ 5.)  Plaintiff's designated place of business is located at 208 Old Main, University Park, Centre County, Pennsylvania, 16802.  (Id.)  Plaintiff owns two federal trademark registrations for the mark "PSU."  (Id. ¶ 19.)  Plaintiff additionally owns and controls two internet domain names that incorporate the PSU mark.  (Id. ¶ 21.)  Plaintiff also "has obtained numerous registrations for PENN STATE and marks incorporating PENN STATE in the United States and around the world."  (Id. ¶ 27.)  Further, Plaintiff has federal trademark registrations to protect its rights to a logo of its mascot, the "Nittany Lion Logo."  (Id. ¶¶ 29-30.)

Plaintiff alleges that Defendants, in the course of business, have infringed Plaintiff's registered trademarks.  (Id. ¶¶ 41-69.)  Specifically, Plaintiff alleges that Defendants incorporated the PSU mark into their internet domain, registered as <goPSUrv.com> (the

---

[1] The following factual background is taken from the allegations of Plaintiff's complaint (Doc. No. 1) and Defendants' answer (Doc. No. 32).

"Disputed Domain") (id. ¶¶ 42, 46), that Defendants "almost exclusively use the brand GoPSUrv.com rather than 'Keystone Alternatives' to promote their goods and services" (id. ¶ 43), and that "[t]hrough the [d]omain, the associated website, and virtually all of their branding and advertising, Defendants attempt to suggest a connection, sponsorship[,] or affiliation with Penn State where no such affiliation exists" (id. ¶ 45).  Plaintiff alleges that Defendants advertise in other media also using the PSU mark.  (Id. ¶¶ 54-58.)  Plaintiff further alleges that Defendants use Plaintiff's other trademarks on their webpage and in advertising.  (Id. ¶¶ 49, 52.)  Plaintiff asserts that Defendants' use of its trademarks "has caused, or is likely to cause, great and irreparable injury to Penn State, including irreparable injury to the goodwill and reputation embodied in those marks."  (Id. ¶ 66.)

Defendants assert that the Disputed Domain has been registered and maintained by its current registrant for approximately ten years, having been registered on April 17, 2010.  (Doc. No. 32 at 12.)  Defendants further assert that Plaintiff had knowledge of and acquiesced to Defendants' use of the Disputed Domain.  (Id.)  Defendants allege that despite Plaintiff's knowledge of and acquiescence to Defendants' use of the Disputed Domain, Plaintiff initiated a Uniform Domain Name Dispute Resolution Proceeding ("UDRP") against them "for the purpose of depriving Defendants of their rights under the domain registration contract with GoDaddy." (Id. at 19.)  Defendants allege that Plaintiff made misrepresentations in its UDRP complaint, and that Plaintiff's actions "have caused a loss of revenue and interfered with Defendant's existing and prospective economic relations."  (Id.)

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions set forth as factual allegations.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the Third Circuit Court of Appeals has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6):  (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.  Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged.  See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  In evaluating a motion to dismiss, a court may generally only consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.    DISCUSSION

### A.    Applicable Legal Standard

In order to state a claim for tortious interference under Pennsylvania law, a party must

allege:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

See Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009) (citing

Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir.1998)).  As

established by the above elements, Pennsylvania distinguishes between claims alleging

interference with existing contractual relations and claims alleging interference with prospective

contractual relations.  See Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 470–71 (Pa.

1979).

"In determining whether there is a prospective contractual relationship in a tortious

interference case, Pennsylvania courts have considered whether the evidence supports a finding

that there was an objectively 'reasonable likelihood or probability' that the contemplated contract

would have materialized absent the defendant's interference."  Acumed, 561 F.3d 199 at 213

(quoting Glenn v. Point Park Coll., 272 A.2d 895, 898-99 (Pa. 1971); Kachmar v. SunGard Data

Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997)).  Such a reasonable likelihood or probability cannot

rest solely on the existence of a current contractual relationship.  See BP Envt'l Servs., Inc. v.

Republic Servs., Inc., 946 F. Supp. 2d 402, 412 (E.D. Pa. 2013) (noting that "[A] mere historical

relationship between parties is not sufficient to show a prospective contractual relationship").

5

Furthermore, in order to state a claim for tortious interference, a plaintiff must allege that the defendant "crossed the line from capitalistic self-interested behavior to unfair conduct." See Clarity Sports Int'l LLC v. Redland Sports, 400 F. Supp. 3d 161, 179 (M.D. Pa. 2019) (internal citation omitted).

### B.    Arguments of the Parties

Plaintiff asserts that the basis of the instant motion is two-fold: (1) that as a matter of law bringing a UDRP action is protected under the First Amendment and is not tortious interference; and (2) that Defendants have nevertheless failed to state a claim for tortious interference.  (Doc. No. 34 at 2.)  Specifically, Plaintiff argues that "[Plaintiff] has a First Amendment right to bring a UDRP action" and that "the Noerr-Pennington doctrine immunizes parties from tort claims, including tortious interference, which are based on the parties' exercise of a First Amendment right to petition agencies and courts."  (Id. at 7.)  Plaintiff further argues that Defendants have failed to "allege that any customers did in fact discontinue relations with Defendants, much less identify a specific customer that declined to do business with Defendants" (id. at 11), and that Defendants "have not plausibly alleged any damages that they incurred as a result of Penn State's purported wrongful conduct" (id. at 12).  Notably, Defendants' own brief does not address any of Plaintiff's arguments.  (Doc. No. 37.)  Defendants, who do not cite to any authority throughout their brief, merely assert that this Court should deny the instant motion because: (1) Plaintiff allegedly made misrepresentations in the UDRP action (id. at 7-8); and (2) Plaintiff allegedly failed to comply with the Local Rules in filing the instant motion by failing to adequately seek Defendants' concurrence (id. at 9-10).

**C.      Whether the Court Should Dismiss Count IV of Defendants' Counterclaims**

Upon review of the parties' arguments and the applicable law, the Court will dismiss

Count IV of Defendants' counterclaims.  Plaintiff is correct that the <u>Noerr-Pennington</u> doctrine

bars Defendants' tortious interference claim.  The <u>Noerr-Pennington</u> doctrine, in its original

conception, provided that individuals could not be subjected to antitrust liability for undertaking

actions generally protected by the First Amendment.  <u>See</u> <u>California Motor Transp. Co. v.</u>

<u>Trucking Unlimited</u>, 404 U.S. 508, 510–11 (1972) (holding that "it would be destructive of rights

of association and of petition to hold that groups with common interests may not, without

violating the antitrust laws, use the channels and procedures of state and federal agencies and

courts to advocate their causes and points of view respecting resolution of their business and

economic interests").  This doctrine has been extended to grant immunity from certain tort

claims, such as tortious interference.  <u>See</u> <u>Trustees of Univ. of Pa. v. St. Jude Children's</u>

<u>Research Hosp.</u>, 940 F. Supp. 2d 233 (E.D. Pa. 2013) (granting motion to dismiss a tortious

interference claim based on <u>Noerr-Pennington</u> immunity).  This immunity also extends to

arbitration for domain name disputes.  <u>See</u>, <u>e.g.</u>, <u>Oneida Tribe of Indians of Wis. v. Harms</u>, No.

05-C-0177, 2005 WL 2758038, *3 (E.D. Wis. Oct. 24, 2005) (dismissing a tortious interference

counterclaim based on <u>Noerr-Pennington</u> immunity where the plaintiff Oneida Tribe lost a

UDRP action and brought a subsequent federal lawsuit); <u>Eurotech, Inc. v. Cosmos European</u>

<u>Travels Aktiengesellschaft</u>, 189 F.Supp.2d 385, 393 (E.D.Va.2002) (applying <u>Noerr-Pennington</u>

immunity to domain name arbitration).

In the present case, it is undisputed that Plaintiff owns federal trademark registrations in

the mark "PSU" and incorporates this mark into internet domain names.  Plaintiff asserts that it

filed a UDRP complaint against Defendants in order to protect its trademarks.  (Doc. No. 34 at

7

9.)  Although Plaintiff was unsuccessful in that proceeding, that does not preclude Plaintiff from

seeking immunity from a tortious interference claim under Noerr-Pennington.  See Oneida, 2005

WL 2758038, *3 (noting that "there is no indication that Oneida Tribe was doing anything other

than exercising rights that are protected by the Noerr-Pennington doctrine [in filing a UDRP

action]")  The Court finds no basis to distinguish the present case from other cases applying

Noerr-Pennington immunity to tortious interference claims arising from UDRP proceedings, nor

have Defendants put forth any argument to the contrary.  Accordingly, the Court finds that

Defendants' tortious interference counterclaim must be dismissed based on Noerr-Pennington.[2]

      Even if Defendants' tortious interference claim was not barred by Noerr-Pennington, the

Court's review of Defendants' allegations makes clear that Defendants have failed to state a

claim for tortious interference.  Defendants fail to identify any contractual relationships that

Plaintiff allegedly interfered with in their counterclaim.[3]  Furthermore, Defendants fail to plead

damages with anything other than the bare assertion that "Plaintiff's actions have caused a loss

of revenue and interfered with Defendant's existing and prospective economic relations."  (Doc.

---

[2] Although there is an exception to the Noerr-Pennington doctrine that precludes immunity in cases of sham litigation, sham litigation must be "objectively frivolous or meritless and must originate from a litigant's subjective motivation to interfere directly with business relationships of a competitor through the litigation."  See Professional Real Estate Investors v. Columbia Pictures Indus., Inc., 508 U.S. 49, 61 (1993).  Other courts have found that claims based on registered trademarks that are similar to disputed domains do not constitute sham litigation.  See Eurotech, 189 F. Supp. 2d at 393 (noting that "[i]n no way can it be said that defendant's WIPO claim constitutes sham litigation; far from being frivolous or objectively meritless, the claim was based on registered trademarks, one of which is identical to the disputed domain name and the second is similar to it").

[3] Defendants appear to attempt to revise their allegations in their opposition brief.  Statements made in an opposition brief to a motion to dismiss may not be used to amend a complaint and are not properly before the Court.  See Niculcea v. Stone Ridge Towne Ctr., No. 1:17-CV-02096, 2020 WL 1487690, at *2 (M.D. Pa. Jan. 8, 2020), report and recommendation adopted, No. 1:17-CV-2096, 2020 WL 1486924 (M.D. Pa. Mar. 24, 2020).

No. 32 at 19.)  Accordingly, Defendants have failed to state a claim for tortious interference and, therefore, Count IV of their counterclaims must be dismissed.[4]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Count IV of Defendants' counterclaims (Doc. No. 33) will be granted.[5]  An Order consistent with this Memorandum follows.

---

[4] Insofar as Defendants have argued the Court should not consider the instant motion due to Plaintiff's alleged noncompliance with the Local Rules, the Court finds this assertion entirely baseless.  Defendants' own submission to the Court proves that Plaintiff attempted to seek concurrence with the instant motion.  (Doc. No. 36-1.)

[5] A court may decline to permit leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  See Foman v. Davis, 371 U.S. 178, 182 (1962).  In the present case, the Court finds that, due to its determination that Defendants' tortious interference claim is barred by Noerr-Pennington immunity, any amendment of this counterclaim would be futile.  Accordingly, the Court's dismissal of this claim is with prejudice.