# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | : : : | No. 1:19-cv-02039 |
| Plaintiff, | : : | |
| v. | : : | (KANE, J.) (SAPORITO, M.J.) |
| KEYSTONE ALTERNATIVES LLC, d/b/a/ GoPSUrv.com; and MARK LAUER, | : : : : | |
| Defendants. | : | |

## **MEMORANDUM**

The plaintiff, The Pennsylvania State University ("Penn State"), initiated this trademark infringement action by the filing of a complaint on November 27, 2019. (Doc. 1.) Before the court is the motion to compel discovery (Doc. 82) filed by the defendants, Keystone Alternatives, LLC d/b/a GoPSUrv.com and Mark Lauer. The matter has been referred to the undersigned United States magistrate judge for resolution. (Doc. 85.)

## I. *Statement of Facts*

As we write for the parties, we only refer to pertinent facts for the resolution of this discovery motion. Penn State's complaint asserts claims against the defendants for trademark infringement – Count I;

unfair competition – Count II; cybersquatting – Count III; trademark dilution – Count IV in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*.; trademark dilution under Pennsylvania law – Count V; and common law trademark infringement and unfair competition – Count VI.

Penn State owns two federal trademark registrations for the mark "PSU" and two internet domain names that incorporate the PSU mark. Penn State also "has obtained numerous registrations for PENN STATE and marks incorporating PENN STATE in the United States and around the world." (Doc. 1 ¶ 27.) Further, Penn State has federal trademark registrations to protect its rights to a logo of its mascot, the "Nittany Lion Logo." (*Id*. ¶¶ 29-30.)

Penn State has alleged that the defendants have infringed its trademarks by incorporating the PSU mark into their internet domain registered as <goPSUrv.com> (the "Disputed Domain") and almost exclusively use the brand GoPSUrv.com rather than Keystone Alternatives to promote their goods and services. (*Id*. ¶ 43.) Penn State alleges that the defendants attempt to suggest a connection, sponsorship, or affiliation with it where no such affiliation exists. (*Id*. ¶ 45.) It has further alleged that the defendants advertise in other media using the

2

PSU mark, and they use other Penn State owned trademarks on their webpage and in advertising which has caused or is likely to cause irreparable injury to Penn State. (*Id.* ¶¶ 49, 52, 54-58, 66.)

The defendants contend that they have used the Disputed Domain for ten years with Penn State's knowledge and acquiescence. Further, the defendants maintain that Penn State initiated a Uniform Domain Name Dispute Resolution Proceeding against them to deprive them of their rights causing a loss of revenue. (Doc. 32, at 12, 19).

A discovery dispute arose regarding whether James Franklin, Penn State's head football coach, should produce documents and whether the defendants may depose him. Also, the defendants argue that Penn State failed to answer some of defendants' request for admissions and requests for production of documents. The parties have submitted their positions in letter format (Doc. 82; Doc. 87) making the motion to compel ripe for disposition. After the submission of the parties position letters, the defendants filed a motion for leave to file an evidentiary supplemental in support of their discovery dispute letter which we granted. (Doc. 92; Doc. 93.) In their evidentiary supplement, the defendants attached, as an exhibit, text messages between Chris Longo and defendant, Mark Lauer.

(Doc. 92-3.) The defendants contend that the text messages confirm James Franklin's authorization to distribute a voucher at official events on campus and in Penn State parking lots, and that the Penn State Athletic Director approved the use of defendants' RV on campus by Franklin. In its response to this submission, Penn State argues that (1) the text messages are between Mark Lauer and Chris Longo, who is not an employee of Penn State; (2) none of the messages contain any information that suggests involvement by Penn State; and (3) the messages are irrelevant because they lack a nexus to the claims or defenses in the case.

## II. Legal Standards

The federal courts have broad discretion to manage discovery, *Sempier v. Johnson & Higgins,* 45 F.3d 724, 734 (3d Cir. 1995), and the federal rules have long permitted broad and liberal discovery. *Pacitti v. Macy's,* 193 F.3d 766, 777 (3d Cir. 1999). Pursuant to Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

4

Further, the federal rules' relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350 (1978).

> Rule 26 establishes a liberal discovery policy. Discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information. Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence.

*Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citations omitted). When the Court is presented with a motion to compel discovery,

> [t]he burden is on the objecting party to demonstrate in specific terms why a discovery request is improper. The party objecting to discovery must show that the requested materials do not fall within the broad scope of relevance or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Id.* at 227 (citations, internal quotation marks, and alterations omitted).

### III. Discussion

Counsel for the parties tried to resolve the disputed discovery items but were unable to resolve them. We will address each of the objections

5

raised by Penn State. Any discovery request requiring a response by Penn State shall be made within twenty-one (21) days of the date of this memorandum.

### *a. James Franklin*

The defendants seek to have James Franklin produce documents responsive to their discovery requests and to depose him. In their submission to the court, the defendants contend that Franklin authorized his agent, Chris Longo, to offer Franklin's endorsement of defendants' services through television commercials in exchange for defendants' RV rental services. (Doc. 82, at 1). The defendants further contend that Franklin's offers to endorse and promote defendants' business to use their services, and to approve defendants' business services are critical to the defendants' defense of acquiescence. (*Id*. at 2 n.1).

In response, Penn State argues that (1) Franklin is the target of many frivolous discovery requests; (2) defendants admit that Franklin did not "actively represent" that Penn State would not assert a trademark claim concerning defendants' use of GoPSUrv.com; (3) Franklin never mentioned defendants' use of GoPSUrv.com; (4) defendants admit that Franklin did not discuss GoPSUrv.com or any

other branding with the defendants; (5) the communications relied upon by defendants were with Chris Longo, a third party; and (6) any request to depose Franklin is not proportioned to the needs of the case. (Doc. 37, at 2-3.)

In order to establish an acquiescence defense in a trademark infringement action, the relevant considerations include whether (1) the senior user actively represented that it would not assert a right or claim; (2) the [senior user's] delay between active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. *Covertech Fabricating, Inc. v. TVM Building Products, Inc.*, 855 F.3d 163, 175 (3d Cir. 2017). In defendant Lauer's deposition, Lauer admits that Franklin never talked to him about the use of <goPSUrv.com.> (Doc. 87-1, at 18.)

Upon review of the submissions of the parties, including the evidentiary supplement containing the text messages exchanged between Chris Longo and the defendant, Mark Lauer, it appears that Franklin's role was peripheral, and any contacts the defendants had with him regarding endorsements for defendants' services were allegedly through Franklin's agent, Chris Longo. None of the submissions

demonstrate that James Franklin, his agent, or anyone affiliated with Penn State made representations that Penn State would not assert a right or claim. The defendants have not deposed Longo and he would appear to be the logical deponent. Therefore, we will deny the defendants' requests that Franklin produce documents responsive to defendants' discovery requests as a custodian and to depose Franklin. However, the denial to depose Franklin shall be without prejudice to the defendants to reassert their motion to depose Franklin depending upon the testimony elicited from Longo.

### b. *Defendant's Requests for Admissions*

**RFA 3:** The objection to Request for Admission No. 3 is overruled; however, we find that this request has been sufficiently answered.

**RFA 5:** The objection to Request for Admission No. 5 is overruled, and Penn State is directed to answer the request specifically as stated and it may qualify the response as it deems necessary.

**RFA 6:** The objection to Request for Admission No. 6 is sustained. The request is overbroad and is not temporally limited.

**RFA 7:** The objection to Request for Admission No. 7 as drafted is sustained in part and overruled in part. The objection is sustained as to whether James Franklin rented an RV from the defendants in 2017 in his personal capacity. The objection is overruled to the extent that Penn State can respond as to whether James Franklin rented an RV from the defendants in 2017 in his capacity as head football coach of Penn State.

**RFA 9:** The objection to Request for Admission No. 9 is overruled; however, we find that this request has been sufficiently answered.

### c. *Penn State Document Production*

**RFP 1 and RFP 2:** The objections to RFP No. 1 and RFP No. 2, as drafted, are sustained in part and overruled in part. The objections are sustained to the extent that the requests seek information from January 1, 2009, to the present. The objections are overruled to the extent that Penn State objects based on the attorney-client privilege. Penn State has failed to produce a privilege log under Fed. R. Civ. P. 26(b)(5). The objections are further overruled, and Penn State is directed

to respond to the requests to the extent that they seek information in a digital format only during the last five years to the present.

Rule 26(b)(1) provides generally that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The party claiming a privilege has the burden of establishing that a privilege applies. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). The burden rests upon the party who claims that requested documents are privileged to "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Here, Penn State has asserted objections based on the attorney-client privilege and the work product doctrine. (RFP Nos. 1 and 2). (Doc. 87, at 6-7.) There is no requirement that a privilege log be created for privileged documents generated after the filing of the complaint. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d. 119, 139 n.22 (3d Cir. 2009). But we are unable to determine whether the asserted attorney-client privilege applies to documents generated prior to the filing of the complaint. *See Northwood Nursing & Convalescent Home,*

*Inc.*, 161 F.R.D. 293, 299 (E.D. Pa. 1995). Therefore, to the extent that Penn State continues to rely upon the attorney-client privilege or other protection from disclosure, we will direct it to provide a privilege log to defendants' counsel describing the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the plaintiff to assess the claim of privilege or protection from disclosure.

An appropriate order follows.

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 3, 2021