IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | : : | |
| Plaintiff | : : | No. 1:19-cv-02039 |
| v. | : : | (Judge Kane) |
| KEYSTONE ALTERNATIVES LLC d/b/a GOPSURV.COM and MARK LAUER, Defendants | : : : : | |

## MEMORANDUM

Before the Court are Defendants Keystone Alternatives LLC d/b/a GoPSUrv.com and Mark Lauer ("Defendants")' objections (Doc. No. 148) to a December 10, 2021 Memorandum and Order (Doc. Nos. 133-34) issued by Magistrate Judge Saporito denying Defendants' motion to compel the deposition testimony of Coach James Franklin ("Coach Franklin") in the above-captioned matter.[1] For the reasons set forth below, the Court will overrule Defendants' objections and affirm the challenged Order.

I.   **BACKGROUND**

This is a trademark infringement action brought by Plaintiff The Pennsylvania State University ("Plaintiff") against Defendants arising out of Defendants' alleged infringing use of Plaintiff's registered trademark "PSU" and two internet domain names that incorporate the PSU mark,[2] as well as the "PENN STATE" mark and the "Nittany Lion Logo."  (Doc. No. 1 ¶¶ 1-4,

---

[1] Defendants entitle their filing "Defendants' Objections to Magistrate Judge Saporito's Report and Recommendation the Court Deny Defendants' Motion to Compel the Deposition Testimony of James Franklin"; however, the filing objected to by Defendants is a Memorandum and Order issued by Magistrate Judge Saporito addressing a nondispositive matter pursuant to Federal Rule of Civil Procedure 72(a), not a Report and Recommendation addressing a dispositive motion issued pursuant to Rule 72(b).

[2] These internet domain names are <psu.edu>, operated by Plaintiff, and <GoPSUsports.com>,

18-21, 26-31.)   In a May 3, 2021 Memorandum addressing discovery disputes between the parties, Magistrate Judge Saporito succinctly summarized the factual background of this case:

> [Plaintiff] has alleged that the defendants have infringed its trademarks by incorporating the PSU mark into their internet domain registered as <goPSUrv.com> (the "Disputed Domain") and almost exclusively use the brand GoPSUrv.com rather than Keystone Alternatives to promote their goods and services.  (Id. ¶ 43.)  [Plaintiff] alleges that the defendants attempt to suggest a connection, sponsorship, or affiliation with it where no such affiliation exists.  (Id. ¶ 45.)  It has further alleged that the defendants advertise in other media using the PSU mark, and they use other [Plaintiff] owned trademarks on their webpage and in advertising which has caused or is likely to cause irreparable injury to [Plaintiff].  (Id. ¶¶ 49, 52, 54-58, 66.)   The defendants contend that they have used the Disputed Domain for ten years with [Plaintiff's] knowledge and acquiescence.  Further, the defendants maintain that [Plaintiff] initiated a Uniform Domain Name Dispute Resolution Proceeding against them to deprive them of their rights causing a loss of revenue.

(Doc. No. 99 at 2-3.)

Based on the above facts, Plaintiff alleges the following claims: trademark infringement (Count I), unfair competition (Count II), cybersquatting (Count III), and trademark dilution (Count IV) in violation of the Lanham Act, 15 U.S.C. § 1051 et seq.  (Doc. No. 1.)   Plaintiff's complaint also asserts a claim for trademark dilution under Pennsylvania law (Count V) and a claim for common law trademark infringement and unfair competition (Count VI).  (Id.)  Defendants filed a motion to dismiss the complaint, which the Court denied, and subsequently filed an answer to the complaint (Doc. No. 32), asserting counterclaims for cyberpiracy (Counterclaim Count I), reverse domain name hijacking (Counterclaim Count II), and tortious interference with contractual relations (Counterclaim Count IV), and seeking a declaratory judgment that Defendants' domain name GoPSUrv.com does not violate the Lanham Act (Counterclaim Count III).   Plaintiff filed a motion to dismiss Counterclaim Count IV, which the Court granted.

---

operated by Plaintiff's authorized licensee.  (Doc. No. 1 ¶ 3.)

Thereafter, the Court held a case management conference and set a close of fact discovery date of December 31, 2020. (Doc. No. 46.) Subsequently, the case was referred to Magistrate Judge Saporito for the purpose of conducting a settlement conference (Doc. Nos. 47, 49), and, by agreement of the parties, the fact discovery deadline was extended to March 31, 2021 (Doc. No. 77). After the undersigned handled an initial discovery-related motion (Doc. Nos. 54-56, 63-64, 67-68), and in light of his familiarity with the case, the Court referred additional discovery-related disputes to Magistrate Judge Saporito for resolution (Doc. Nos. 85, 102). The Court extended the close of fact deadline again—to April 30, 2021—upon the parties' joint request. (Doc. No. 90.)

On May 4, 2021, Defendants filed another motion (Doc. No. 101), which Plaintiff opposed (Doc. No. 103), requesting an extension of the discovery deadline. On June 7, 2021, the Court granted Defendants' motion only insofar as necessary to ensure compliance with orders issued by Magistrate Judge Saporito regarding discovery. (Doc. No. 109.) One such order was Magistrate Judge Saporito's May 3, 2021 Memorandum and Order (Doc. Nos. 99-100) resolving a motion to compel various discovery. As Magistrate Judge Saporito's May 3, 2021 Memorandum and Order directly relates to the instant appeal, the Court quotes the relevant portion below:

> The defendants seek to have James Franklin produce documents responsive to their discovery requests and to depose him. In their submission to the court, the defendants contend that Franklin authorized his agent, Chris Longo, to offer Franklin's endorsement of defendants' services through television commercials in exchange for defendants' RV rental services. (Doc. 82, at 1). The defendants further contend that Franklin's offers to endorse and promote defendants' business to use their services, and to approve defendants' business services are critical to the defendants' defense of acquiescence. (Id. at 2 n.1).
>
> In response, [Plaintiff] argues that (1) Franklin is the target of many frivolous discovery requests; (2) defendants admit that Franklin did not "actively represent" that [Plaintiff] would not assert a trademark claim concerning defendants' use of

3

> GoPSUrv.com; (3) Franklin never mentioned defendants' use of GoPSUrv.com; (4) defendants admit that Franklin did not discuss GoPSUrv.com or any other branding with the defendants; (5) the communications relied upon by defendants were with Chris Longo, a third party; and (6) any request to depose Franklin is not proportional to the needs of the case.  (Doc. 37, at 2-3.)
>
> In order to establish an acquiescence defense in a trademark infringement action, the relevant considerations include whether (1) the senior user actively represented that it would not assert a right or claim; (2) the [senior user's] delay between active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. Covertech Fabricating, Inc. v. TVM Building Products, Inc., 855 F.3d 163, 175 (3d Cir. 2017).  In defendant Lauer's deposition, Lauer admits that Franklin never talked to him about the use of <goPSUrv.com> (Doc. 87-1, at 18.)
>
> Upon review of the submissions of the parties, including the evidentiary supplement containing the text messages exchanged between Chris Longo and the defendant, Mark Lauer, it appears that Franklin's role was peripheral, and any contacts the defendants had with him regarding endorsements for defendants' services were allegedly through Franklin's agent Chris Longo.  None of the submissions demonstrate that James Franklin, his agent, or anyone affiliated with [Plaintiff] made representations that [Plaintiff] would not assert a right or claim.  The defendants have not deposed Longo and he would appear to be the logical deponent.  Therefore, we will deny the defendants' requests that Franklin produce documents responsive to defendants' discovery requests as a custodian and to depose Franklin.  However, the denial to depose Franklin shall be without prejudice to the defendants to reassert their motion to depose Franklin depending upon testimony elicited from Longo.

(Doc. No. 99 at 6-8.)

Defendants thereafter conducted the deposition of Chris Longo ("Longo"), as permitted by Magistrate Judge Saporito's Order, and, on September 20, 2021, filed a motion to compel the deposition testimony of Coach Franklin (Doc. No. 114), with a brief in support (Doc. No. 115). Noting that the motion related to Magistrate Judge Saporito's May 3, 2021 Memorandum and Order, the Court, on September 29, 2021, referred the motion to him for resolution.  (Doc. No. 118.)  After the motion to compel was briefed, Defendants filed a motion to stay case deadlines based on Defendants' counsel's COVID-19 illness (Doc. No. 125), and the Court thereafter granted the motion to stay and continued all case management deadlines (Doc. No. 128).  The

Court held a status conference with the parties on December 1, 2021, after which the Court issued an order lifting the stay of case deadlines and ordering that any Daubert motions or motions to dismiss[3] be filed by December 13, 2021. (Doc. No. 131.)

On that date, Plaintiff filed two Daubert motions (Doc. Nos. 135, 140) with supporting briefs (Doc. Nos. 136, 141), and Defendants filed a motion to dismiss for failure to join an indispensable party (Doc. No. 142), along with a supporting brief (Doc. No. 143). Three days before the parties filed those motions, Magistrate Judge Saporito issued a Memorandum and Order (Doc. Nos. 133-34) denying Defendants' renewed motion to compel the deposition testimony of Coach Franklin. The parties agreed to extend the deadlines to oppose the pending motions (Doc. No. 144), and, after briefs in opposition to the Daubert motions were filed (Doc. Nos. 153-54), the parties filed reply briefs (Doc. Nos. 157-58), making the Daubert motions ripe for resolution. Defendants' motion to dismiss for failure to join an indispensable party has also been fully briefed. Those motions will be addressed by the Court in separate Memoranda and Orders.

Meanwhile, on December 20, 2021, Defendants filed the instant appeal of Magistrate Judge Saporito's Memorandum and Order denying their renewed motion to compel the deposition testimony of Coach Franklin (Doc. No. 148), along with a brief in support of the appeal (Doc. No. 149). Plaintiff filed a brief in opposition to the appeal (Doc. No. 152); Defendants did not file a reply brief. Accordingly, Defendants' appeal is ripe for resolution.

## II.   APPLICABLE LEGAL STANDARDS

Pursuant to 28 U.S.C. § 636, a district court will only reconsider a magistrate judge's

---

[3] At the status conference, Defendants' counsel indicated his plan to file a motion to dismiss for failure to join an indispensable party. In addition, the parties agreed that any Daubert motions must be resolved prior to the Court's issuance of a dispositive motion deadline.

pre-trial ruling on a nondispositive matter when the ruling "is clearly erroneous or contrary to law."  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  See Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  A finding is contrary to law "if the magistrate judge has misinterpreted or misapplied applicable law."  See Alarmax Distrib. v. Honeywell Int'l Inc., No. 2:14-cv-01527, 2016 WL 6791240, at *1 (W.D. Pa. Apr. 20, 2016).  Discovery orders are treated as nondispositive.  See Haines v. Liggett Group, Inc., 975 F.2d 81, 92 (3d Cir. 1992) (holding that "the proper standard of review of discovery orders is the 'clearly erroneous or contrary to law' standard" (quoting 28 U.S.C. § 636(b)(1)(A)).

Discovery-related matters are generally committed to the trial court's discretion, and its discovery-related decisions "will be disturbed only upon a showing of an abuse of this discretion."  See Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  Further, "a magistrate judge's ruling on discovery issues is accorded particular deference."  See Alarmax, 2016 WL 6791240, at *2; see also Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998) (stating that, "[w]here a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion").  "[A] reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently."  Hodczak v. Latrobe Specialty Steel Co., No. 08-cv-00649, 2010 WL 892205, at *2 (W.D. Pa. Mar. 9, 2010).  This deferential review is "particularly appropriate" when the magistrate judge has had significant involvement in the case and has therefore "developed a thorough knowledge of the proceedings."  See id.

Federal Rule of Civil Procedure 37 provides that "[o]n notice to other parties and affected persons, a party may move for an order compelling disclosure of discovery."  See Fed. R. Civ. P. 37(a)(1).  Federal Rule of Civil Procedure 26(b) provides as follows regarding the scope of discovery available to the parties:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit.

See Fed. R. Civ. P. 26(b)(1).  If "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," the court must limit discovery.  See Fed. R. Civ. P. 26(b)(2)(C)(iii).

## III. DISCUSSION

### A. Arguments of the Parties

In support of their challenge to Magistrate Judge Saporito's Order, Defendants maintain that "[t]he affirmative defenses of laches and acquiescence in these cases turn on whether Penn State knew, or should have know[n], of Defendants' use of GOPSURV and whether Penn State took affirmative steps which would have led a reasonable defendant to believe its use of PSU was authorized."  (Doc. No. 149 at 3.)  Accordingly, Defendants argue that Longo's deposition testimony, which in some instances contradicts certain representations made in a text message chain between Longo and Defendant Lauer, has created "a factual dispute about whether Coach Franklin and AD Barbour authorized Defendants to use GOPSURV and to distribute vouchers bearing the GOPSURV mark at official events of [Plaintiff]."  (Id. at 6.)

Defendants assert that Magistrate Judge Saporito erred in the following ways.  First, Defendants assert that he erred as a matter of law by incorrectly stating the factual position of Defendants when he stated that "Defendants concede that Longo was not acting as an agent on

7

behalf of Franklin at any time." (Id. at 7.)  Second, Defendants assert that Magistrate Judge Saporito erred as a matter of law by "stating incorrectly that the Defendants only specified two reasons for Franklin's deposition testimony" (id. at 8) and, further, erred by stating that "the defendants did not submit any evidence to demonstrate that Franklin, his agent, or anyone affiliated with Penn State made representations that Penn State would not assert a right of claim to the use of GoPSUrv.com" because:

> Defendants did provide text messages (annexed to Longo's deposition and previously filed documents (See Docs 143-1 and 119)[).] showing Longo repeatedly communicating that Coach Franklin and/or AD Barbour had made statements which a reasonable person would [] believe gave authority to use GoPSUrv.com, as the authorized advertising flyers where to be handed out, and were handed out, at PSU Football games and official events.  Further, as aforementioned, Franklin himself visited the GoPSUrv tailgating party, signed the roof of one of the GoPSUrv's RVs with a trademark of Penn State and sought the use of the RVs for both personal and professional reasons.  Thus, from these evidentiary documents it may be, at the very least inferentially noted, that Franklin and/or AD Barbour represented and ratified that PSU would not assert a right or claim to the use of GoPSUrv.com in the advertising flyers, or as located boldly on all its RVs which were prominent[ly] displayed at PSU Football Games.

(Id. at 8-9.)

Next, Defendants argue that Magistrate Judge Saporito applied the wrong standard regarding the burden of persuasion on a motion to compel when he stated that "none of the reasons offered to support their instant motion to compel the deposition of Franklin is relevant to any party's claim or defenses in this case," because Defendants argue that they "met their burden to show relevance by demonstrating enough of a possibility that Coach Franklin and/or AD Barbour had given authority to the Defendants to use GoPSUrv.com in advertising materials on campus that discovery on the same is permissible." (Id. at 10.)  Therefore, Defendants maintain that the "burden then shifted to the Plaintiff to articulate specific terms as to why the deposition request was improper," but "Plaintiff simply did not and could not show that the

8

request for Coach Franklin's deposition was overly broad in scope (given that he would be questioned about his authorization for the GoPSUrv.com advertising and use of the RVs) and Plaintiff could not show that the testimony would be only of marginal relevance since the Defendants will use the relevant testimony to demonstrate its defense of acquiescence, an integral part of its case." (Id. at 10-11.) In connection with that objection, Defendants also maintain that Magistrate Judge Saporito's decision is erroneous because he "failed to follow the liberal discovery standards laid out in the federal rules." (Id. at 11.)

In response, Plaintiff maintains that Magistrate Judge Saporito correctly applied the law governing motions to compel discovery, and that his review of the record was not clearly erroneous. (Doc. No. 152 at 10.) Plaintiff responds to each objection raised by Defendants in turn. First, Plaintiff maintains that a reading of Magistrate Judge Saporito's Memorandum as a whole (in light of his knowledge of the parties' positions and arguments resulting from his significant involvement in this case) reflects that he correctly understood Defendants' position in connection with their motion to compel—i.e., that Longo acted as Coach Franklin's agent. (Id. at 10.) Plaintiff points out that the Memorandum specifically sets forth Defendants' position that "Franklin authorized his agent, Chris Longo, to offer Franklin's endorsement of defendants' services . . . ." (Doc. No. 133 at 2.) Accordingly, Plaintiff submits that Magistrate Judge Saporito's statement that "defendants concede that Longo was not acting as an agent on behalf of Franklin at any time" is a mere typographical error, and that, based on the evidence produced in this case, he meant to state Defendants' position that "Longo was not acting as an agent on behalf of Penn State" at any time. (Doc. No. 152 at 10-11 & n.1.)

As to Defendants' second, two-part objection that (1) Magistrate Judge Saporito "misread" their brief because his Memorandum stated that Defendants "specified only two

reasons for seeking Coach Franklin's testimony," and (2) incorrectly stated that they had not submitted evidence showing that Franklin or any agent of Penn State had represented that they would not assert trademark rights against Defendants, Plaintiff maintains that, as to (1), the Memorandum fully set forth Defendants' position as described in the section of their brief headed "Relevance of Franklin's Testimony to the Litigation, and Potential Indispensable Party Status of Athletes First." (Id. at 12-13.) In addition, Plaintiff asserts that, to the extent Defendants maintain that Magistrate Judge Saporito failed to consider certain of their arguments, they do not identify any such arguments. (Id. at 13.) With regard to (2), Plaintiff notes that this part of Defendants' objection pertains to their contention that they submitted evidence showing that Defendant Lauer was given authorization to use GoPSUrv.com by Longo. (Id. at 14-15.) Plaintiff identifies the following portion of the Memorandum as subject to objection by Defendants:

> After reviewing the submissions of the parties together with the excerpts of the deposition transcripts of Longo, we are not persuaded that Longo's deposition testimony demonstrates that Franklin, or anyone affiliated with Penn State, made representations that Penn State would not assert any right or claim to the trademark.

(Id. at 15) (quoting Doc. No. 133 at 5). Plaintiff states that Defendants' objection on this point amounts to a disagreement with Magistrate Judge Saporito's view of the evidence, which does not amount to clear error. (Id. at 16.) Rather, Plaintiff asserts that the relevant question is whether Magistrate Judge Saporito's factual findings were based on a permissible interpretation of the evidence, and further maintains that the record supports Magistrate Judge Saporito's conclusion that "neither Coach Franklin nor anyone else from Penn State represented to Mr. Lauer that Penn State would not pursue any trademark claims regarding GoPSUrv." (Id. at 16-17.) Plaintiff argues that Defendants acknowledge that their view of the evidence of record

relies on inferences, and so "[i]n this circumstance there can be no doubt that Judge Saporito's view of the evidence was reasonable, and therefore was not an abuse of discretion."  (Id. at 17.)

Finally, Plaintiff addresses Defendants' argument that Magistrate Judge Saporito abused his discretion in concluding that Defendants failed to meet their burden to demonstrate the relevance of Coach Franklin's testimony and failed "to follow the liberal discovery standards of Rule 26."  (Id. at 18.)  Plaintiff asserts that the "core" of both related objections "is the question of whether Judge Saporito erred as a matter of law when he ruled that Defendants had not met their burden of showing that deposing Coach Franklin was likely to lead to relevant information."  (Id. at 18-19.)  Plaintiff maintains that Defendants' objection amounts to a disagreement with Judge Saporito's factual findings.  Plaintiff asserts that Judge Saporito did not clearly err in denying Defendants' request to depose Coach Franklin because his review of the evidence led him to conclude that any testimony of Coach Franklin would relate only to "peripheral issues" in this case, and, moreover, that the burden of deposing Coach Franklin "would be disproportionately large compared to the needs of the case."  (Id. at 19.)  Accordingly, Plaintiff argues that Magistrate Judge Saporito did not clearly err in applying the relevant law and, therefore, Defendants' objections should be overruled.

### B.    Whether Defendants Met Their Burden to Demonstrate That the Challenged Order is Clearly Erroneous or Contrary to Law

Upon careful consideration of Magistrate Judge Saporito's May 3, 2021 Memorandum and Order (Doc. Nos. 99, 100), Defendants' Motion to Compel Deposition Testimony (Doc. No. 114) and supporting brief (Doc. No. 115), Plaintiff's brief in opposition (Doc. No. 121), Defendants' reply brief (Doc. No. 124), Magistrate Judge Saporito's December 10, 2021 Memorandum and Order (Doc. Nos. 133-34), Defendants' objections thereto (Doc. No. 148) and brief in support of those objections (Doc. No. 149), Plaintiff's responsive brief (Doc. No. 152),

the record in this case, and the relevant authorities, the Court finds that Defendants have failed to meet their burden to demonstrate that Magistrate Judge Saporito's Memorandum and Order is contrary to law or clearly erroneous.  As an initial matter, the Court is unpersuaded by Defendants' position that Magistrate Judge Saporito erred as a matter of law by incorrectly stating their position as to Longo's status as Franklin's agent when he stated "the defendants concede that Longo was not acting as an agent on behalf of Franklin at any time."  A reading of the entirety of the Memorandum—in which Magistrate Judge Saporito correctly restates Defendants' position that "Franklin authorized his agent, Chris Longo, to offer Franklin's endorsement of defendants' services"—coupled with Magistrate Judge Saporito's extensive knowledge of this case by way of his involvement in settlement discussions as well as the resolution of multiple discovery disputes (including issues concerning Coach Franklin), leads the Court to the conclusion that Magistrate Judge Saporito likely committed a simple typographical error when he referred to "Franklin" instead of "Penn State" or "Plaintiff" in the challenged statement.

      The Court next addresses Defendants' second (two-part) objection: (1) that Magistrate Judge Saporito "misread" their brief because he stated that Defendants "specified only two reasons for seeking Coach Franklin's testimony," and (2) that Magistrate Judge Saporito incorrectly concluded that they failed to submit evidence showing that Franklin or any agent of Penn State represented that they would not assert trademark rights against Defendants.  As to the first point, the Court agrees with Plaintiff that Defendants can hardly quibble with Magistrate Judge Saporito's articulation of their two reasons supporting the relevance of Coach Franklin's testimony when he parroted Defendants' own presentation of their arguments in that regard in a section of their brief entitled "Relevance of Franklin's Testimony to the Litigation, and Potential

Indispensable Party Status of Athletes First," which was followed by the below language:

> Franklin's testimony is necessary to determine: (1) whether Longo perjured himself repeatedly in his deposition by asserting that he had never spoken with, or communicated with Franklin about Defendants; or (2) whether, if Longo was in fact acting fraudulently without any authority in communicating with Defendants for Franklin and Barbour as he now claims, whether Athletes First is an indispensable party to this litigation having fraudulently induced Defendants to believe their use of GOPSURV was authorized by Franklin and Barbour as agents of Penn State, then withholding knowledge of that misrepresentation, and inducing Defendants to act in ignorance thereof, throughout this case despite Athletes First receiving being aware via subpoena of these representations.

(Doc. No. 115 at 13.)   With regard to the second part of Defendants' objection, Defendants object to the following conclusion of Magistrate Judge Saporito:

> After reviewing submissions of the parties together with the excerpts of the deposition transcripts of Longo, we are not persuaded that Longo's deposition testimony demonstrates that Franklin, or anyone affiliated with Penn State, made representations that Penn State would not assert any right or claim to the trademark.

(Doc. No. 133 at 5.)   The Court agrees with Plaintiff that Defendants' objection to this conclusion amounts to a disagreement with Magistrate Judge Saporito's view of the evidence, which does not suffice to meet Defendants' burden to demonstrate that such factual findings are "clearly erroneous."   Magistrate Judge Saporito's factual findings were based on a permissible interpretation of the evidence of record, and that conclusion is buttressed by Defendants' acknowledgment that their view of the evidence relies on inferences, because, after listing the evidence they maintain supports their position, they state: "from these evidentiary documents it may be, at the very least inferentially noted, that Franklin and/or AD Barbour represented and ratified that PSU would not assert a right or claim to the use of GoPSUrv.com[.]"   (Doc. No. 149 at 9.)   Defendants have demonstrated only their disagreement with Magistrate Judge Saporito's findings, not that such findings were "clearly erroneous."

Finally, the Court addresses Defendants' argument that Magistrate Judge Saporito abused

13

his discretion in concluding that Defendants failed to meet their burden to demonstrate the relevance of Coach Franklin's testimony and failed "to follow the liberal discovery standards of Rule 26." (Id. at 10-11.) As Plaintiff notes, the "core" of these related objections "is the question of whether Judge Saporito erred as a matter of law when he ruled that Defendants had not met their burden of showing that deposing Coach Franklin was likely to lead to relevant information." (Doc. No. 152 at 18-19.) The Court agrees with Plaintiff that, based on his assessment of the facts and his view that testimony from Coach Franklin would relate only to "peripheral issues" in the case, Magistrate Judge Saporito did not err as a matter of law in concluding that Defendants failed to meet their burden to demonstrate the potential relevance of such testimony. In any event, Magistrate Judge Saporito also concluded that (assuming the potential relevance of such testimony) "permitting defendants to depose James Franklin would be disproportional to the needs of the case." (Doc. No. 133 at 6.) In light of Rule 26(b)'s provision permitting "[p]arties [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," the Court finds that Magistrate Judge Saporito's Memorandum and Order denying Defendants' motion to compel was not "clearly erroneous" or contrary to law. Accordingly, the Court will overrule Defendants' objections and affirm Magistrate Judge Saporito's Order denying Defendants' motion to compel.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will overrule Defendants' objections to Magistrate Judge Saporito's December 10, 2021 Memorandum and Order and affirm his Order denying Defendants' motion to compel. An appropriate Order follows.