## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | : | |
| | : | |
| Plaintiff | : | No. 1:19-cv-02039 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| KEYSTONE ALTERNATIVES LLC d/b/a GOPSURV.COM and MARK LAUER, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Plaintiff The Pennsylvania State University ("Plaintiff")'s "Unopposed Motion for Leave to File Under Seal Exhibits in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment" (Doc. No. 191), along with Plaintiff's and Defendants Keystone Alternatives LLC d/b/a GoPSUrv.com and Mark Lauer ("Defendants")' responses (Doc. Nos. 201–02) to this Court's May 26, 2023 Order to Show Cause ("May 26, 2023 Order") (Doc. No. 197) directing the parties to show cause why the documents both parties filed provisionally under seal[1] in connection with their cross-motions for summary judgment should remain sealed pursuant to the requirements of In re Avandia Marketing, Sales Practices and Products Liability Litigation, 924 F.3d 662 (3d Cir. 2019) ("Avandia") governing the sealing of materials filed in connection with a summary judgment motion.  For the reasons that follow, the Court will largely deny Plaintiff's motion but will grant the motion insofar as the Court will temporarily retain under seal Plaintiff's Exhibit 60 while permitting Plaintiff to file a redacted version of that exhibit, and will temporarily retain under seal Defendants' Exhibit E, pending the

---

[1]  Defendants did not file a motion seeking permission from the Court to file documents under seal; rather, Defendants simply filed five sealed documents on the docket of this matter in connection with their responses to Plaintiff's motion for summary judgment.  (Doc. Nos. 184–88.)

parties' clarification regarding the nature of the exhibit.  The Court will also permit Plaintiff to file appropriately excerpted (but unredacted) versions of two other exhibits on the docket of this matter, and direct the Clerk of Court to unseal certain exhibits provisionally filed under seal by both parties and to strike certain exhibits from the Court's docket.  In addition, the Court will provide third-party Christopher Longo the opportunity to be heard regarding the potential unsealing of his deposition transcript and accompanying exhibits.

## I.   BACKGROUND

While this case has an extensive procedural background, the Court recites only that background necessary to the resolution of the pending motion.  This is a trademark infringement action arising out of Defendant Keystone's alleged infringing use of Plaintiff's registered trademark "PSU" and two internet domain names that incorporate the PSU mark, as well as the "PENN STATE" mark and the "Nittany Lion Logo."  (Doc. No. 1 ¶¶ 1–4, 18–21, 26–31.)  In a May 3, 2021 Memorandum addressing discovery disputes between the parties, Magistrate Judge Saporito succinctly summarized the factual background of this case:

> [Plaintiff] has alleged that the defendants have infringed its trademarks by incorporating the PSU mark into their internet domain registered as <goPSUrv.com> (the "Disputed Domain") and almost exclusively use the brand GoPSUrv.com rather than Keystone Alternatives to promote their goods and services. ([Doc. No. 1] ¶ 43.)  Plaintiff alleges that the defendants attempt to suggest a connection, sponsorship, or affiliation with it where no such affiliation exists.  (Id. ¶ 45.)  It has further alleged that the defendants advertise in other media using the PSU mark, and they use other [Plaintiff] owned trademarks on their webpage and in advertising which has caused or is likely to cause irreparable injury to [Plaintiff].  (Id. ¶¶ 49, 52, 54–58, 66.)  The defendants contend that they have used the Disputed Domain for ten years with [Plaintiff's] knowledge and acquiescence.   Further, the defendants maintain that [Plaintiff] initiated a Uniform Domain Name Dispute Resolution Proceeding against them to deprive them of their rights causing a loss of revenue.

(Doc. No. 99 at 2–3.)

2

Based on the above facts, Plaintiff asserts the following claims against Defendants: trademark infringement (Count I), unfair competition (Count II), cybersquatting (Count III), and trademark dilution (Count IV), all in violation of the Lanham Act, 15 U.S.C. § 1051 et seq. (Doc. No. 1.)  Plaintiff also asserts a claim for trademark dilution (Count V) under Pennsylvania law and a claim for common law trademark infringement and unfair competition (Count VI). (Id.)  Defendants asserted several counterclaims against Plaintiff, and the following remain pending before the Court: cyberpiracy (Counterclaim Count I), reverse domain name hijacking (Counterclaim Count II), and declaratory judgment that the Disputed Domain does not violate the Lanham Act (Counterclaim Count III).  See (Doc. Nos. 32, 39–40).

After discovery closed, and in accordance with the Court's Order dated March 6, 2023 (Doc. No. 167), on April 14, 2023, Plaintiff and Defendants filed motions for summary judgment (Doc. Nos. 173, 176), briefs in support of those motions (Doc. Nos. 175, 179), and respective statements of facts in support of those motions (Doc. Nos. 174, 178).  Both statements of facts attached numerous exhibits.  (Id.)  After the Court granted the parties an extension of time (Doc. No. 183), on May 12, 2023, Defendants filed five sealed documents on the docket of this matter in connection with their response to Plaintiff's motion for summary judgment.  (Doc. Nos. 184–88.)  The first document (Doc. No. 184) is a letter from counsel for Defendants ("Counsel") to the Clerk of Court enclosing a flash drive containing nine documents, which consist of portions of exhibits previously submitted in support of Defendants' motion for summary judgment.  See (Doc. No. 184); (Doc. Nos. 174-2; 174-4 through 174-9; 174-11; and 174-12).  The remaining four documents (Doc. Nos. 185–88) consist of the portions of exhibits referred to in Counsel's letter.  On that date, Defendants also filed their answer to Plaintiff's statement of material facts

(Doc. No. 189), with numerous attached exhibits (Doc. Nos. 189-1 through 189-13), several of which Defendants also sought to file under seal,[2] as well as a brief in opposition to Plaintiff's motion for summary judgment (Doc. No. 190).

Also on May 12, 2023, Plaintiff filed its "Unopposed Motion for Leave to File Under Seal Exhibits in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment" (Doc. No. 191), with a proposed order (Doc. No. 191-1) and supporting brief (Doc. No. 192). By way of that motion, Plaintiff originally sought to file under seal Exhibits 45, 54, 56, 58, and 60 (Doc. Nos. 194-14; 194-25; 194-27; 194-29; and 194-31) to its response in opposition to Defendants' statement of facts in support of their summary judgment motion. On that date, Plaintiff filed its brief in opposition to Defendants' motion for summary judgment (Doc. No. 193), as well as an answer to statement of facts (Doc. No. 194), with numerous attached exhibits (Doc. Nos. 194-1 through 194-34). Subsequently, on May 17, 2023, Plaintiff filed the exhibits to Docket Number 194 sought to be filed under seal (Doc. Nos. 194-14; 194-25; 194-27; 194-29; and 194-31) provisionally under seal on the Court's docket at Docket Numbers 196-1 through 196-5. On May 26, 2023, both parties filed reply briefs in further support of their motions for summary judgment. (Doc. Nos. 198–99.) Those summary judgment motions remain pending before the Court.

Also on May 26, 2023, the Court issued its Order (Doc. No. 197) directing the parties to show cause why the exhibits submitted provisionally under seal should not be made a part of the publicly available docket in this matter under the standards applicable to judicial records

---

[2]  The exhibits sought to be sealed by Defendants—Docket Numbers 189-1 through 189-5, 189-7 through 189-9, and 189-11 through 189-12—were transmitted to the Court by way of a letter filed June 7, 2023 (Doc. No. 204) and subsequently filed provisionally under seal on the Court's docket at Docket Numbers 209-1 through 209-10.

articulated by the United States Court of Appeals for the Third Circuit in <u>Avandia</u>.  (<u>Id.</u>)  In its

May 26, 2023 Order, the Court referenced <u>Avandia</u>'s discussion of the common law right of

access to judicial records as well as the First Amendment right of access, which "requires a much

higher showing than the common law right of access before a judicial proceeding can be sealed."

 See <u>Avandia</u>, 924 F.3d at 673 (quoting <u>In re Cendant Corp.</u>, 260 F.3d 183, 198 n.13 (3d Cir.

2001)).  That Order directed the Clerk of Court to maintain the documents filed by Defendants

(Doc. Nos. 184–88, representing exhibits contained at Doc. Nos. 174-2; 174-4 through 174-9;

174-11; and 174-12) and documents filed by Plaintiff (Doc. Nos. 196-1 through 196-5,

representing exhibits contained at Doc. Nos. 194-14; 194-25; 194-27; 194-29; and 194-31)

provisionally under seal until further order of Court.  (Doc. No. 197 at 6–7.)  On June 5, 2023,

Plaintiff and Defendants filed their respective responses to the Court's May 26, 2023 Order.

(Doc. Nos. 201–02.)[3]  Accordingly, Plaintiff's motion for leave to file exhibits under seal,

Defendants' effort to seal documents related to the parties' summary judgment motions, and both

parties' responses to the Court's May 26, 2023 Order, are ripe for resolution.

## II.   LEGAL STANDARD

    The Third Circuit's opinion in <u>Avandia</u> confirmed its earlier holding that a common law

right of access applies to judicial records, stating that there exists a "presumptive right of public

access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the

---

[3]  As noted <u>supra</u> at note 2, on June 7, 2023, Defendants filed under seal on the Court's docket a
letter (Doc. No. 204) which resubmitted certain documents originally intended to be filed under
seal by way of its May 12, 2023 letter (Doc. Nos. 174-8, 174-11, and 174-12), now filed
provisionally under seal on the Court's docket at Docket Numbers 204-1 and 205 through 208, in
addition to submitting the exhibits located at Docket Numbers 189-1 through 189-5, 189-7
through 189-9, 189-11, and 189-12, for filing under seal on the Court's docket.  As noted above,
the exhibits to Docket Number 189 sought to be filed under seal are filed provisionally under
seal on the Court's docket at Docket Numbers 209-1 through 209-10.

material filed in connection therewith." See Avandia, 924 F.3d at 672 (citing In re Cendant

Corp., 260 F.3d at 192).  The Third Circuit reiterated that "documents filed in connection with a

motion for summary judgment are judicial records." See id. (citing Republic of the Philippines

v. Westinghouse Elec. Corp., 949 F.2d 653, 660–62 (3d Cir. 1991)).  However, Avandia

recognized that "the common law right of access is 'not absolute'" and stated that "[t]he party

seeking to overcome the presumption of access bears the burden of showing 'that the interest in

secrecy outweighs the presumption.'"  See id. (quoting Bank of Am. Nat'l Tr. & Sav. Ass'n v.

Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986)).  The Third Circuit held that "[t]he

movant must show 'that the material is the kind of information that courts will protect and that

disclosure will work a clearly defined and serious injury to the party seeking closure.'"  See id.

(quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

The Third Circuit then detailed the nature of a district court's obligation in determining

whether a litigant has met its burden to show that the presumptive right of access has been

overcome, stating:

> [T]he District Court must articulate the compelling, countervailing interests to be
> protected, make specific findings on the record concerning the effects of disclosure,
> and provide[] an opportunity for interested third parties to be heard. In delineating
> the injury to be prevented, specificity is essential.  Broad allegations of harm, bereft
> of specific examples or articulated reasoning, are insufficient.  [C]areful factfinding
> and balancing of competing interests is required before the strong presumption of
> openness can be overcome by the secrecy interests of private litigants.  To that end,
> the District Court must conduct[] a document-by-document review of the contents of the
> challenged documents.

See id. at 672–73 (cleaned up).

The Third Circuit in Avandia discussed not only the common law right of access to

judicial records but also the First Amendment right of access to judicial proceedings, which

6

"requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." See Avandia, 924 F.3d at 673 (quoting In re Cendant Corp., 260 F.3d at 198 n.13). "It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings." Id. The majority in Avandia declined to address the applicability of the First Amendment right of access to summary judgment materials under the circumstances of that case, where the litigant had not met its burden to overcome the presumptive common law right of access to judicial records. See id. at 679–80. However, as to the First Amendment right of access, the court stated that "[w]e use a two-prong test to assess whether the right of access attaches: (1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.'" See id. at 673 (quoting N. Jersey Media Grp. Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016)). If both prongs are met, the First Amendment right of access presumptively applies, and this presumption can be rebutted "only if [the party seeking closure is] able to demonstrate 'an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" See id. (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984)). In declining to consider the applicability of the First Amendment right of access under the circumstances presented to it in Avandia,[4] the Court of Appeals directed that "[i]f on remand the

---

[4]  Judge Restrepo, in an opinion concurring in part and dissenting in part, concluded that the First Amendment right of public access extends to summary judgment materials. See id. at 681–84. The Second and Fourth Circuits have held that the First Amendment right of public access extends to summary judgment materials. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 124 (2d Cir. 2006); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir.

District Court concludes that any of the sealed documents merits continued confidentiality under the common law right of access, then the Court should also consider the parties' arguments regarding the First Amendment right of public access." See Avandia, 924 F.3d at 680.

## III.   DISCUSSION

The Court first addresses Plaintiff's motion for leave to file exhibits under seal and response to the Court's May 26, 2023 Order—and whether Plaintiff has met its burden to show that its interest in secrecy outweighs the common law presumption of access to judicial records with respect to the documents it seeks to retain under seal on the docket of this matter—before addressing Defendants' response to the Court's May 26, 2023 Order.

### A.   Plaintiff's Motion For Leave to File Exhibits Under Seal (Doc. No. 191)/ Response to the Court's Order to Show Cause (Doc. No. 202)

As noted above, Plaintiff's motion seeks to maintain under seal five exhibits to its opposition to Defendant's motion for summary judgment—Docket Numbers 194-14, filed under seal at 196-1 ("Exhibit 45"); 194-25, filed under seal at 196-2 ("Exhibit 54"); 194-27, filed under seal at 196-3 ("Exhibit 56"); 194-29, filed under seal at 196-4 ("Exhibit 58"); and 194-31, filed under seal at 196-5 ("Exhibit 60").  In its response to the Court's May 26, 2023 Order, Plaintiff purports to articulate good cause to maintain under seal those five documents filed by it, as well as four documents filed by Defendants—Docket Numbers 174-7/189-2 ("Defendants' Exhibit B"), filed under seal at 188 and 209-2; 174-9/189-4 ("Defendants' Exhibit D"), filed under seal at 187 and 209-4; 174-4/189-12 ("Defendants' Exhibit L"), filed under seal at 184-1 and 209-10; and 189-5 ("Defendants' Exhibit E"), filed under seal at 209-5.  (Doc. No. 202 at 1–2.)

Along with its response, Plaintiff filed a notice (Doc. No. 203) attaching a redacted

1988).

version of four of the five documents previously filed by Plaintiff under seal (redacted Doc. No. 196-1, filed at Doc. No. 203-1 ("Redacted Exhibit 45"); redacted Doc. No. 196-2, filed at Doc. No. 203-2 ("Redacted Exhibit 54"); redacted Doc. No. 196-3, filed at Doc. No. 203-3 ("Redacted Exhibit 56"); redacted Doc. No. 196-4, filed at Doc. No. 203-4 ("Redacted Exhibit 58")) and three of the four documents previously filed under seal by Defendants and sought to be maintained under seal by Plaintiff (redacted Doc. No. 174-7/189-2, filed at Doc. No. 203-5 ("Redacted Defendants' Exhibit B"); redacted Doc. No. 174-9/189-4, filed at Doc. No. 203-6 ("Redacted Defendants' Exhibit D"); redacted Doc. No. 174-4/189-12, filed at Doc. No. 203-7 ("Redacted Defendants' Exhibit L")).

In its response, Plaintiff addresses the four redacted exhibits filed by it and states that it "has redacted from these documents the testimony that contains confidential information warranting protection, as explained below." (Doc. No. 202 at 2.) As to the three redacted versions of documents previously filed under seal by Defendants and sought to be retained under seal by Plaintiff—which consist of deposition transcripts (Redacted Defendants' Exhibit B; Redacted Defendants' Exhibit D; Redacted Defendants' Exhibit L)—Plaintiff states that it "has limited the pages included to only those that Defendants actually rely on in their filings, and further redacted confidential information from [Redacted Defendants' Exhibit B and Redacted Defendants' Exhibit D]." (Doc. No. 202 at 2.) Plaintiff argues that "[b]y submitting additional information to be filed publicly"—consisting of redacted and/or excerpted documents—"the Court will be balancing the public interest in accessing judicial information while still protecting [Plaintiff's] legitimate interests in its privacy" and should therefore retain those seven exhibits under seal on the docket of this matter. (Id. at 2–3.)

9

In light of the seven redacted documents filed by it, Plaintiff asserts in its response that it now asks the Court to maintain only two documents entirely under seal—one filed by it (Exhibit 60, filed under seal at 196-5) and one filed by Defendants (Defendants' Exhibit E, filed under seal at 209-5)—arguing that this approach "will ensure that the public access to judicial records is fully addressed, while protecting [Plaintiff's] interest [in] protecting its confidential information about legal enforcement, licensing strategy, and sensitive financial information." (Doc. No. 202 at 3.)  Plaintiff argues that it has "legitimate interests in maintaining the [c]onfidential [i]nformation under seal" which "outweigh the public's presumptive right of access, especially since the parties' briefings . . . and the redacted copies of the exhibits being submitted, provide the information relevant for the judicial record."  (Id.)  Plaintiff argues generally that the documents sought to be sealed contain Plaintiff's confidential business information, "public disclosure of which would harm [Plaintiff's] competitive standing and the future enforcement of its trademark rights, and sensitive third-party information, public disclosure of which would harm Penn State and the third party in future contract negotiations." (Id. at 5.)  Plaintiff maintains that such information is of the type "that courts in this Circuit have found to be protectable, namely (1) confidential internal communications concerning [Plaintiff's] legal enforcement and licensing strategy; (2) confidential internal communications about [Plaintiff's] decision making in applying various policies across different vendors; and (3) confidential contracts that [Plaintiff] has entered with third parties which contain sensitive terms and financial data."  (Id. at 5–6.)  Plaintiff also maintains that "the information sought to be sealed does not need to be disclosed to the public to understand the filings at issue, as [Plaintiff's] Brief in Support of its Opposition to Defendants' Motion for Summary Judgment

('Opposition Brief') and its Response in Opposition to Defendants' Statement of Undisputed

Facts ('SUMF Opposition') are both unredacted."  (Id. at 6.)  The Court reviews each of the nine

documents addressed by Plaintiff in turn.

### 1.    Plaintiff's Exhibit 45

Plaintiff's Exhibit 45 is a short email dated April 14, 2015 from Plaintiff's Associate

Athletic Director for Business Relations and Communication Tom McGrath to Maureen Riedel,

with the subject line "RV Rentals – PSU Football Games."  The email attaches advertising

material from Defendants regarding RV rentals for PSU home football games during the 2015

football season.  Plaintiff's Redacted Exhibit 45 redacts some language from the email that

appears to reflect Plaintiff's internal decisionmaking processes regarding the attached advertising

material.

As to Exhibit 45, Plaintiff argues that "[t]his redacted document sets out the information

in this document that is of primary relevance in this case—showing when [Plaintiff] first became

aware of Defendants' use of the goPSUrv Mark"—and that the redacted information which it

seeks to retain under seal contains additional information about Plaintiff's internal strategy for

enforcing trademarks.  (Doc. No. 202 at 7.)  Plaintiff asserts that it "has a legitimate interest in

maintaining these redacted communications under seal because they provide information about

how [Plaintiff] evaluates concerns regarding potential trademark infringement" and, if such

information was available to the public, it would provide "future infringers insight into how

[Plaintiff] analyzes potential infringement and how [Plaintiff] approaches these concerns."  (Id.)

Upon review of Exhibit 45 and Redacted Exhibit 45, the Court is unpersuaded that

Plaintiff has met its burden to demonstrate that its interest in secrecy outweighs the presumption

of public access to judicial records as to Exhibit 45.  Plaintiff cites Genentech, Inc. v. Amgen, Inc., No. 17-cv-01407, 2020 WL 9432700, at *6 (D. Del. Sept. 2, 2020), report and recommendation adopted, No. 17-cv-01407, 2020 WL 9432702 (D. Del. Oct. 1, 2020), in support of its position that the public should not be granted access to its "confidential information" contained in unredacted Exhibit 45.  (Doc. No. 202 at 7.)  The Court finds Plaintiff's citation to Genentech unavailing.  In determining whether the presumption of public access is overcome post-Avandia, the court in Genentech stated that "[t]he critical divide is the distinction between material containing palpable trade secrets or proprietary business practices that will produce present commercial and competitive harm, on the one hand, and vague, conclusory assertions of commercial or competitive harm," noting that "[t]he touchstone is the persuasive demonstration of specific, concrete, particularized [] harm."  See 2020 WL 9432702, at *2.  The court found that the justification for sealing the relevant information in that case included "trade secrets, proprietary scientific research, highly sensitive manufacturing information, the confidential terms of settlement and license agreements, business intelligence, regulatory strategies, and confidential legal information."  See id. at *5.  Further, the court noted that the request to seal the information was accompanied by "comprehensive and persuasive factual explanation and documentation as to why the material each identified as appropriate for sealing does in fact meet the criteria [provided in Avandia]," including "numerous, lengthy, and detailed factual declarations by highly placed and expert employees within their respective companies."  See id.  Accordingly, the court in Genentech concluded that the parties had adequately demonstrated "how the information contained in their proposed sealings and redactions, if disclosed, would visit upon them present commercial and competitive harm."  See

12

id.

As the <u>Genentech</u> court recognized, <u>Avandia</u> requires a party seeking to overcome the presumptive common law right of access to demonstrate both (1) "that the material is the kind of information that courts will protect" <u>and</u> (2) "that disclosure will work a clearly defined and serious injury to the party seeking closure."  <u>See</u> <u>Avandia</u>, 924 F.3d at 672 (cleaned up).  Here, even if the Court assumes that the information redacted from Exhibit 45 is the "kind of information that courts will protect," Plaintiff has simply failed to demonstrate that disclosure of that information "will work a clearly defined and serious injury" to it.  <u>See id.</u>  Unlike the parties in <u>Genentech</u>, Plaintiff has not submitted a declaration detailing the specific, particularized harm to which it would be subjected upon public disclosure of the unredacted email, a showing that is required to overcome the presumption of public access to judicial records.  Instead, Plaintiff's arguments in support of its request consist of conclusory assertions of competitive harm.  <u>See</u> (Doc. No. 202 at 7 (arguing that "[a]llowing this information to be generally available to the public would provide future infringers insight into how [Plaintiff] analyzes potential infringement and how [Plaintiff] approaches these concerns")).  Such assertions are simply insufficient to overcome the presumptive right of public access to judicial records.  <u>See</u> <u>In re:</u> <u>Application of Storage Etzel GMBH</u>, No. 19-mc-00209, 2020 WL 1949742, at *22 (D. Del. Mar. 25, 2020) (denying request to seal where the parties "merely recited, in conclusory and blanket fashion, generalized claims of competitive harm").  Accordingly, the Court will direct the Clerk of Court to unseal Exhibit 45, filed in unredacted form at Docket Number 196-1, and strike from the docket Redacted Exhibit 45, filed at Docket Number 203-1.

### 2.    Plaintiff's Exhibit 58

While Plaintiff addresses Exhibit 54, Exhibit 56, Exhibit 58, Defendants' Exhibit B and Defendants' Exhibit D collectively, the Court addresses Exhibit 58 separately from the others because it consists of an email and Exhibit 54, Exhibit 56, Defendants' Exhibit B, and Defendants' Exhibit D consist of deposition transcripts from the depositions of Plaintiff's employees Maureen Riedel and Tom McGrath.  Plaintiff characterizes Exhibit 58 as an email "where the information to be sealed contains internal [Plaintiff] discussions about how to apply policies across different vendors."  (Doc. No. 202 at 8.)  As to Redacted Exhibit 58, Plaintiff asserts that the redacted portions "concern how [Plaintiff] has evaluated concerns about Defendants and their competitors, and assessed how the University's policies apply across these different constituents."  (Id. at 9.)  Plaintiff argues that it "has a strong interest in maintaining this information under seal because this information would allow potential and current competitors, licensees, and third parties (including potential infringers) to gain insight into internal business, licensing and enforcement strategies that they would otherwise not be aware of."  (Id.)

Upon review of Exhibit 58 and Redacted Exhibit 58, the Court is unpersuaded that Plaintiff has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access to summary judgment materials.  The post-Avandia case cited by Plaintiff in support of its request to seal unredacted Exhibit 58 (and file a redacted version on the public docket) is Cutsforth, Inc. v. Lemm Liquidating Co., LLC, No. 17-cv-01025, 2020 WL 772442, at *1 (W.D. Pa. Feb. 18, 2020), which does not support Plaintiff's request.  In that case, the court found that the plaintiff met its burden to rebut the presumption of common law (and First Amendment) access and therefore permitted the filing of redacted materials, specifically, "data

14

related to product pricing (such as price differentials, average selling price and discounts), profit margins, costs of manufacturing, number of units sold and customer lists."  See id.   In so doing, the court analogized the information sought to be protected to trade secrets, noting that, "[i]n this Circuit, 'an interest in safeguarding a trade secret may overcome a presumption of openness.'" See id. at *2 (quoting Publicker Indus., Inc., 733 F.2d at 1073).  The court's conclusion in this regard was based on this Circuit's view, as expressed in Publicker, that disclosure of a trade secret may result in significant harm.  See id.

As noted supra, Avandia requires a party seeking to overcome the presumptive common law right of access to demonstrate both (1) "that the material is the kind of information that courts will protect" and (2) "that disclosure will work a clearly defined and serious injury to the party seeking closure."  See Avandia. 924 F.3d at 672.  Here, even if the Court assumes that the redacted information in Exhibit 58 is the "kind of information that courts will protect," Plaintiff has simply failed to demonstrate that disclosure of that information "will work a clearly defined and significant injury" to it.  See id.  Plaintiff has not submitted a declaration articulating the specific, particularized harm to which it would be subjected upon disclosure of unredacted Exhibit 58, a showing that is required to overcome the presumption of public access to judicial records.  The Court notes that the information in Exhibit 58 sought to be redacted by Plaintiff cannot be considered akin to "product pricing . . .  profit margins, costs of manufacturing, number of units sold and customer lists," see Cutsforth, Inc., 2020 WL 772442, at *1, and Plaintiff has offered only conclusory assertions of competitive harm in support of its redaction request.  See (Doc. No. 202 at 9 (arguing that "this information would allow potential and current competitors, licensees, and third parties (including potential infringers) to gain insight

into internal business, licensing and enforcement strategies that they would otherwise not be aware of")).  Accordingly, the Court concludes that Plaintiff has failed to overcome the presumptive right of public access to the material contained in Exhibit 58, and the Court will therefore direct the Clerk of Court to unseal Exhibit 58, filed in unredacted form at Docket Number 196-4, and strike from the docket Redacted Exhibit 58, filed at Docket Number 203-4.

### 3.   Plaintiff's Exhibit 54 and Exhibit 56/Defendants' Exhibit B and Exhibit D

As noted above, these exhibits consist of portions of deposition transcripts of Plaintiff's employees Maureen Riedel (Exhibit 54, filed under seal at Docket Number 196-2, and Defendants' Exhibit B, filed under seal at Docket Numbers 188 and 209-2) and Tom McGrath (Exhibit 56, filed under seal at Docket Number 196-3, and Defendants' Exhibit D, filed under seal at Docket Numbers 187 and 209-4).  First, as to Defendants' Exhibit B and Defendants' Exhibit D, Plaintiff notes that those exhibits consist of full versions of the relevant deposition transcripts (Doc. Nos. 187–88; 209-2; 209-4) and argues that only those portions of the transcripts cited in the parties' filings should be publicly available; accordingly, it represents that it has filed only the excerpts of these depositions that are cited in the parties' filings at Docket Numbers 203-5 (Redacted Defendants' Exhibit B) and 203-6 (Redacted Defendants' Exhibit D) and asks the Court to permit the filing of Redacted Defendants' Exhibit B and Redacted Defendants' Exhibit D and to retain Defendants' Exhibit B (Doc. Nos. 188 and 209-2) and Defendants' Exhibit D (Doc. Nos. 187 and 209-4) under seal.  (Doc. No. 202 at 8.)  However, the Court notes that, in addition to excerpting the Riedel and McGrath deposition transcripts to the pages cited in the parties' filings, Plaintiff in Redacted Defendants' Exhibit B and Redacted Defendants' Exhibit D has also significantly redacted certain information.  See (Doc. Nos. 203-5,

16

203-6).  As Plaintiff admits, it "has limited the pages included to only those that Defendants actually rely on in their filings, and further redacted confidential information from [these exhibits]."  (Doc. No. 202 at 2 (emphasis added).)  Further, and as noted above, in response to the Court's May 26, 2023 Order, Plaintiff also filed versions of its Exhibit 54 and Exhibit 56 containing significant redactions at Docket Number 203-2 (Redacted Exhibit 54) and Docket Number 203-3 (Redacted Exhibit 56).  Plaintiff accordingly asks the Court to permit the filing of those redacted exhibits and to retain the unredacted Exhibit 54, Exhibit 56, Defendants' Exhibit B and Defendants Exhibit D under seal on the Court's docket.

In support of its request that it be permitted to file excerpted and redacted versions of the Riedel and McGrath deposition transcripts contained in its Exhibit 54 and Exhibit 56, as well as Defendants' Exhibit B and Exhibit D, Plaintiff argues that limiting the deposition transcripts to only the relevant pages and "then redacting [Plaintiff's] sensitive information" will "balance the interests at stake here."  (Doc. No. 202 at 8.)  Plaintiff asserts that the redacted material contains its "trademark enforcement strategy" and "confidential information about [Plaintiff's] internal delegation of duties in addressing business and licensing decisions and making decisions about various enforcement actions, including how those responsibilities are addressed across various departments."  (Id. at 9.)  Similar to Exhibit 58, discussed supra, Plaintiff argues that it "has a strong interest in maintaining this information under seal because this information would allow potential and current competitors, licensees, and third parties (including potential infringers) to gain insight into internal business, licensing and enforcement strategies that they would otherwise not be aware of."  (Id.)  Plaintiff maintains that these unredacted materials should remain under seal given that it has provided redacted copies of the documents to be filed publicly

and that the relevant discussions of these documents in the parties' briefing is unredacted.  (Id. at

10.)

Upon review of Exhibit 54, Redacted Exhibit 54, Exhibit 56, Redacted Exhibit 56,

Defendants Exhibit B, Redacted Defendants' Exhibit B, Defendants' Exhibit D, and Redacted

Defendants' Exhibit D, the Court is unpersuaded that Plaintiff has met its burden to demonstrate

that its interest in secrecy outweighs the presumption of public access to these judicial records.

Again, Plaintiff cites Cutsforth, Inc. in support of its request to redact from public view portions

of these deposition transcripts relied on by the parties in their summary judgment filings.

However, as noted above, the court in that case permitted the redaction of certain product pricing

material that it found analogous to trade secret material, the disclosure of which it determined

would result in specific, particularized harm.  See Cutsforth, Inc., 2020 WL 772442, at *1–2.

Here, even assuming that the redacted information in these deposition transcripts is the "kind of

information that courts will protect," Plaintiff has failed to demonstrate that disclosure of that

information "will work a clearly defined and significant injury" to it.  See Avandia, 924 F.3d at

672.  As noted above, Plaintiff has not submitted a declaration in support of its redaction/sealing

request that provides a factual basis upon which the Court can conclude that public access to the

redacted portions of Exhibit 54, Exhibit 56, Defendants' Exhibit B, and Defendants' Exhibit D

will cause specific, particularized harm to Plaintiff, instead proffering only conclusory assertions

of competitive harm in its response.  See (Doc. No. 202 at 9 (arguing that "this information

would allow potential and current competitors, licensees, and third parties (including potential

infringers) to gain insight into internal business, licensing and enforcement strategies that they

would otherwise not be aware of")).  As stated above, such conclusory assertions of harm fail to

overcome the presumptive right of public access to this material.  Accordingly, the Court will direct the Clerk of Court to unseal Exhibit 54, filed in unredacted form at Docket Number 196-2, and Exhibit 56, filed in unredacted form at Docket Number 196-3, and strike from the docket Redacted Exhibit 54, filed at Docket Number 203-2, and Redacted Exhibit 56, filed at Docket Number 203-3.

However, the Court is persuaded by Plaintiff's position that it is appropriate to file excerpted versions of the deposition transcripts of Riedel and McGrath, as opposed to the entire deposition transcripts, as Defendants have done by way of Defendants' Exhibit B and Defendants' Exhibit D.  Only those portions of the record relied on by the parties in connection with their statements of material facts or responses thereto must be filed on the public docket of this matter.  See L.R. 56.1 (providing that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements").  Because Plaintiff has not only excerpted but also redacted certain allegedly "sensitive information" from Defendants' Exhibit B and Defendants' Exhibit D (the entire deposition transcripts of Riedel and McGrath) in Redacted Defendants' Exhibit B and Redacted Defendants' Exhibit D, and because, having failed to meet its burden to overcome the presumption of public access to that information, Plaintiff is not permitted to redact its "sensitive information" from those excerpted transcripts, the Court will provide Plaintiff the opportunity to file excerpted (but unredacted) versions of these deposition transcripts to include only those portions of the transcripts relied on by the parties in their summary judgment filings.  If Plaintiff fails to file an appropriately excerpted but unredacted version of Defendants' Exhibit B and Defendants' Exhibit D within the timeframe established by the Court, the Court will direct the

Clerk to unseal Defendants' Exhibit B (Doc. Nos. 188 and 209-2) and Defendants' Exhibit D (Doc. Nos. 187 and 209-3). The Court will direct the Clerk to strike from the docket of this matter Redacted Defendants' Exhibit B, filed at Docket Number 203-5, and Redacted Defendants' Exhibit D, filed at Docket Number 203-6.

### 4.   Defendants' Exhibit L

Plaintiff next addresses Defendants' Exhibit L,[5] filed under seal at Docket Number 184-1, which consists of the entire deposition transcript of Plaintiff.[6] Plaintiff states that it has "submitted a proposed revised version of this document, which contains only the pages of that transcript that Defendants actually rely on in their filings." See (Doc. No. 202 at 10–11 (referring to "Redacted Defendants' Exhibit L," filed at Docket Number 203-7)). Plaintiff represents that "[t]hese excerpts do not contain information confidential to [Plaintiff]." (Id. at 11.)

Upon review of Defendants' Exhibit L and Redacted Defendants' Exhibit L, and in reliance on Plaintiff's representation that Redacted Defendants' Exhibit L consists of the excerpts of Plaintiff's deposition relied on by Defendants in their summary judgment filings, without any additional redactions of those pages by Plaintiff to protect allegedly confidential information, the Court concludes that Plaintiff's filing of Redacted Defendants' Exhibit L (or more precisely, "Excerpted Defendants' Exhibit L") does not implicate its interest in secrecy of

---

[5] On page ten of its response to this Court's May 26, 2023 Order, Plaintiff refers to this exhibit as "Defs' Exhibit E"; however, given that Plaintiff's response addresses a different "Defs' Exhibit E" on page eleven, and that Plaintiff's response correctly refers to this exhibit on page two as "Defs' Exhibit L," it is clear to the Court that this exhibit should properly be referred to as "Defs' Exhibit L."

[6] The Court notes that Defendants have also filed a version of this deposition transcript under seal at Docket Number 209-10.

confidential information, so the Court need not engage in an analysis as to whether Plaintiff has

met its burden to overcome the common law right of access to Defendants' Exhibit L.

Accordingly, in light of Plaintiff's filing of "Redacted Defendants' Exhibit L," which contains

those excerpts of Plaintiff's deposition relied on by Defendants in their summary judgment

filings, the Court will direct the Clerk of Court to strike Defendants' Exhibit L, the entire

deposition transcript of Plaintiff (filed in unexcerpted form at Docket Numbers 184-1 and 209-

10), from the docket.[7]

### 5.   Plaintiff's Exhibit 60 and Defendants' Exhibit E

The Court turns to Plaintiff's Exhibit 60 and Defendants' Exhibit E, both of which

Plaintiff asks this Court to retain under seal based on the fact that they consist of "contracts that

[Plaintiff] has entered with third parties." (Doc. No. 202 at 11.)  Plaintiff represents that Exhibit

60 "contains a sponsorship agreement that [Plaintiff] recently entered with a third party." (Id.)

Plaintiff maintains that Exhibit 60 consists of an agreement that "has only recently commenced,

and the contract provides information about the relationship between these entities, including

highly sensitive financial information." (Id.)  As to Defendants' Exhibit E, Plaintiff asserts that

it "contains a contract between [Plaintiff] and Sidearm Sports that covers a wide range of

different services that were covered between these parties." (Id.)  Plaintiff maintains that, as to

both exhibits, "the information from these documents that is relevant to this case has already

---

[7]   The Court notes that Docket Numbers 184-1 and 209-10 are not the same versions of
Plaintiff's deposition transcript.  While one of the versions contains exhibits to the deposition
(Doc. No. 184-1), and the other version appears not to contain exhibits, it is not entirely clear to
the Court how those exhibits differ, and Defendants have offered no explanation for the
difference between the exhibits.  In any event, relying on Plaintiff's representation that its
"Redacted Defendants' Exhibit L" contains the pages relied on by Defendants in their summary
judgment filings, and noting that Defendants have not challenged that representation, the Court
concludes that it is appropriate to strike both versions of the transcript filed by Defendants.

been disclosed through the parties' filings," and "[a]s for the contracts themselves, which contain much more detailed information that goes beyond what is directly relevant to this dispute, [Plaintiff] has legitimate interests in maintaining these under seal." (Id. at 11–12.)  Specifically, Plaintiff argues that it possesses "privacy interests in protecting its financial and licensing information, particularly given that these contracts represent agreements that have been negotiated with third parties, and disclosing the terms of these contracts publicly would affect [Plaintiff] in future negotiations by providing information to future counterparties that would not otherwise be available." (Id. at 12.)  Plaintiff maintains that "the Third Circuit and lower courts in this circuit have often permitted parties to seal documents containing confidential financial and business information." (Id.)  The Court notes that Plaintiff does not support its request with an affidavit detailing the specific harm to which it would be subjected upon disclosure, but argues that the information in these contracts "comprises sensitive financial and business information, which [Plaintiff] has legitimate interests in protecting from public view to preserve its competitive advantage," because "[i]f potential service providers or sponsors had access to the confidential information at issue regarding the terms and conditions in [Plaintiff's] agreements, [Plaintiff] could be seriously harmed because they could use this information to gain undue leverage in negotiations." (Id. at 13.)

The Court notes that Defendants also address the continued sealing of their Exhibit E in their response to the Court's May 26, 2023 Order.  Defendants characterize Defendants' Exhibit E as "[a] contract between Plaintiff and SideARM Sports, a third-party which manages <gopsusports.com>." (Doc. No. 201 at 6.)  Defendants assert that "Plaintiff has publicly alleged it owns and controls <gopsusports.com>, and this contract is relevant to that assertion." (Id.)

Defendants state that they "see no reason why the contents of this contract overcome the common law right of access."  (Id.)

Upon careful review of Defendants' Exhibit E and Plaintiff's Exhibit 60, the Court finds that Plaintiff has met its burden to overcome the presumption of public access to the entirety of Exhibit 60, such that the Court will permit Plaintiff to file a version of Exhibit 60 redacted to remove sensitive financial terms.  As to Defendants' Exhibit E, the Court will require the parties to clarify the nature of the exhibit before addressing whether Plaintiff has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access.  The Court notes that, in support of its request that Defendants' Exhibit E and Plaintiff's Exhibit 60 remain sealed, Plaintiff cites district court cases from this Circuit that pre-date Avandia, all of which concern, at least in part, the potential sealing of financial information regarding pricing or sales. See (Doc. No. 202 at 12–13) (citing Nilson v. Softmart, Inc., No. 12-cv-03914, 2015 WL 12791435, at *5 (E.D. Pa. Nov. 3, 2015) (finding cause to seal documents containing "sensitive financial information or pornographic material"); Mosaid Tech. Inc. v. LSI Corp., 878 F. Supp. 2d 503, 510 (D. Del. 2012) (granting parties' request to redact financial information including "monies paid by the parties pursuant to the licensing agreements-at-issue"); Hershey Co. v. Promotion in Motion, Inc., No. 07-cv-01601, 2010 WL 1812593, at *3 (D.N.J. May 4, 2010) (permitting the sealing of two pages of deposition transcript that contained "proprietary and commercially sensitive financial and sales information")).  In the Court's view, these cases do not necessarily support Plaintiff's sealing request as to Defendants' Exhibit E because Defendants' Exhibit E does not contain "sensitive financial information" that could be considered akin to a trade secret potentially necessitating protection from disclosure under this

Circuit's precedent.  Rather, Defendants' Exhibit E is a 123-page exhibit that is entitled "Proposal for ("Client") Pennsylvania State University Athletic Website," but appears to contain 119 pages of listings of positions of employment with Plaintiff, including the responsibilities of each position and the competencies required to adequately perform each position, as well as the names of some employees.  See (Doc. No. 209-5 at 1–119).  The last four pages of Defendants' Exhibit E appear to consist of some advertising material for goPSUrv.com.  See (id. at 120–23). The Court notes that, in their response to Plaintiff's Statement of Material Facts (Doc. No. 189), Defendants cite paragraph 10.2 of Defendants' Exhibit E as support for the proposition that "Plaintiff's own contract with SideARM Sports sets forth that SideARM Sports, not Plaintiff, owns the intellectual property associated with the website at <gopsusports.com>."  (Doc. No. 189 at 5.)  Defendants' Exhibit E, as filed on the Court's docket at Docket Number 209-5, does not appear to contain a paragraph 10.2 and does not appear to be a contract.  Accordingly, the Court will temporarily retain Docket Number 209-5 under seal while requiring the parties to clarify whether Docket Number 209-5 is the Defendants' Exhibit E to which the parties refer before addressing the continued sealing of that exhibit.

With regard to Plaintiff's Exhibit 60, as noted above, the Court is persuaded that Plaintiff has met its burden to demonstrate that its interest in secrecy outweighs the presumptive right of access to this exhibit such that the Court will permit Plaintiff to file a redacted version of Exhibit 60 that removes sensitive financial terms contained within it.  As noted above, Plaintiff's Exhibit 60 consists of a recently-signed sponsorship agreement between Plaintiff and a third-party RV vendor.  The exhibit contains the financial terms of that agreement, or the monies to be paid by the third-party vendor to Plaintiff's "designated multi-media rights holder" over a three-year

24

period.  The Court recognizes that the financial terms in this agreement may be viewed as akin to

a trade secret requiring protection from disclosure so as to protect Plaintiff from competitive

harm by compromising its ability to conduct future contractual negotiations.  See Avandia, 924

F.3d at 679 (noting that "courts may permissibly seal judicial records 'where they are sources of

business information that might harm a litigant's competitive standing'") (quoting Westinghouse

Elec. Corp., 924 F.2d at 662); Cutsforth, Inc., 2020 WL 772442, at *1 (finding a compelling

countervailing interest sufficient to permit redaction of "data related to product pricing . . . ,

profit margins, costs of manufacturing, numbers of units sold and customer lists" because

"disclosure of these specific pieces of information would materially harm [the plaintiff's]

negotiating position in the marketplace"); Mosaid Tech. Inc., 878 F. Supp. 2d at 510 (permitting

redaction of monies paid in connection with licensing agreements because that information "is

the type of information which, while largely incidental to the substantive issues in the case, could

cause real and serious harm to the parties' future negotiations if disclosed to competitors").

However, the Court concludes that it is more appropriate to require Plaintiff to redact the

financial terms from Exhibit 60 as opposed to retaining the entirety of Exhibit 60 under seal, as

requested by Plaintiff.  See Del Nero v. NCO Financial Systems, Inc., No. 06-cv-04823, 2021

WL 2375892, at *2 (E.D. Pa. June 10, 2021) (noting that "where possible, parties should propose

redactions, rather than placing a whole document under seal"); Mosaid Tech. Inc., 878 F. Supp.

2d at 510 (permitting the redaction of monies paid under a licensing agreement).  Accordingly,

the Court will retain Plaintiff's Exhibit 60, filed at Docket Number 196-5, temporarily under seal

on the docket of this matter while affording Plaintiff the opportunity to file on the Court's docket

a version of this agreement redacted to remove the sensitive financial terms of the agreement.[8]

**B.    Defendants' Spontaneous Sealing of Exhibits/Response to the Court's Order to Show Cause (Doc. No. 203)**

In their June 5, 2023 response to the Court's Order to Show Cause (Doc. No. 201), Defendants state that they filed certain exhibits under seal—which they characterize as Docket Numbers 174-2 through 174-12 and 189-1 through 189-12—because they had been marked as "confidential, highly confidential, or attorney-eyes only by Plaintiff [] as well as Athletes First and Penn State Sports Propert[ies] (PSSP)."  (Doc. No. 201 at 3.)  They state that these exhibits include "[m]arketing and [s]ponsorship [a]greements executed between PSSP and Defendants over various years granting Defendants permission to undertake various public activities, such as putting up displays and parking Defendants' RVs in front of the Bryce Jordan Center on campus," "[i]nsurance liability certificates having only personal information of Defendants . . . which information Defendants are not seeking to protect," and "[t]ext messages and emails between Athletes First (the sports agency representing James Franklin) and Defendants, in which

---

[8] The Court notes that <u>Avandia</u> indicates that, if a district court finds that any documents merit continued sealing under the common law right of access, it "should also consider the parties' arguments regarding the First Amendment right of public access."  <u>See</u> <u>Avandia</u>, 924 F.3d at 680.  Despite the Court's reference to the First Amendment right of public access in its May 26, 2023 Order, Plaintiff in its response to that Order does not appear to address the First Amendment right of public access.  In the absence of argument on this issue, the Court is not inclined to assess the applicability of the First Amendment right of access in this context. However, even if the Court assumes that the First Amendment right of access applies to Exhibit 60, it concludes that the burden to overcome that access is met here in light of the specific competitive injury that would result from disclosure of the financial terms of Exhibit 60 and the Court's narrowly-tailored approach of directing Plaintiff to redact the financial information from Exhibit 60 instead of permitting the entire exhibit to be sealed from public view.  <u>See</u> <u>Aetna, Inc. v. Mednax, Inc.</u>, No. 18-cv-02217, 2021 WL 5987205, at *6 (E.D. Pa. Dec. 17, 2021) (concluding that the defendant "made the 'much higher showing' required under the First Amendment for [sensitive commercial information] because the redactions [defendant] applied to protect its information are narrowly tailored to serve [defendant's] interest in the secrecy of its competitive information, and essential to the preservation of that interest").

Athletes First negotiates the terms of RV rental services for James Franklin." (Id. at 3–4.)

Defendants state that they do not believe that anything in these exhibits "would overcome a

presumption of openness," but note that Plaintiff "previously represented the interests of Athletes

First in this proceeding before this Court when showing cause as to why the deposition transcript

of Christopher Longo, which includes these text messages, should remain sealed during a

discovery motion." (Id. at 4.) Ultimately, Defendants state that they "cannot show cause why

the exhibits to Mark Lauer's declarations should remain under seal." (Id.)

In addition to addressing the continued sealing of their Exhibit E, as described above,

Defendants also address the various deposition transcripts submitted by the parties in support of

their competing summary judgment motions, noting that they "include the depositions of Mark

Bodenschatz, David Baker, Mark Lauer, Iona Conlon, Maureen Riedel, Thomas McGrath,

Timothy Bordner, Christopher 'Chris' Longo, and [Plaintiff]" and stating that "[t]hese deposition

transcripts appear to focus on the knowledge that [Plaintiff] had of Defendants' activities and

responsibilities of the deponents in position of employment." (Id. at 5.) Defendants state that

they "do not see that confidential revenue figures are discussed in the depositions or exhibits to

the depositions" and "do not see reference to any 'sensitive financial information' mentioned by

Plaintiff" but recognize that "the manner in which Plaintiff investigates potentially infringing use

of its Marks is discussed briefly in some of the transcripts"; however, Defendants state that they

"do not see that this information would overcome the strong presumption of openness." (Id.)

### C.    Summary

With the exception of those four exhibits that the Court has concluded should remain

temporarily under seal on the Court's docket while it: (1) permits Plaintiff to file those exhibits

in excerpted or redacted form (i.e., Defendants' Exhibit B (Doc. Nos. 188/209-2), Defendants'

Exhibit D (Doc. Nos. 187/209-3) and Plaintiff's Exhibit 60 (Doc. No. 196-5)); and (2) requires

the parties to clarify the nature of Defendants' Exhibit E to confirm that the correct document has

been filed on the Court's docket (Defendants' Exhibit E (Doc. No. 209-5)), the Court will direct

the Clerk of Court to unseal the remaining exhibits submitted under seal in support of the parties'

summary judgment motions and to strike from the docket Plaintiff's proposed redacted exhibits,

with the exception of the deposition of Christopher Longo (Doc. No. 207).  As indicated by

Defendants, the Court notes that it previously permitted the filing of third-party Christopher

Longo's deposition ("Longo Deposition") under seal in connection with a discovery dispute

pursuant to the Third Circuit's longstanding rule, established in Leucadia, Inc. v. Applied

Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993), that discovery-related motions and

supporting materials are not subject to a presumptive right of public access.  See (Doc. No. 118).

 Given the differing standards applicable to materials filed in connection with discovery disputes

as opposed to materials filed in connection with summary judgment motions, as expressed in

Avandia, the fact that the Court previously permitted the Longo Deposition to be filed under seal

does not mean that it should necessarily remain sealed when filed in connection with the parties'

summary judgment motions.  However, because third-party Christopher Longo's interests are not

necessarily protected by Plaintiff or Defendants here, the Court will provide Christopher Longo

the opportunity to address whether his deposition, filed in connection with Defendants' response

to Plaintiff's motion for summary judgment (Doc. No. 207), should remain sealed pursuant to

Avandia before directing the Clerk of Court to unseal that deposition and its exhibits.  See

Avandia, 924 F.3d at 672–73 (noting that, in assessing the common law right of access, courts

28

must "provide[ ] an opportunity for interested third parties to be heard") (internal quotation marks and citation omitted).[9]

In accordance with the foregoing, the Court will direct the Clerk of Court to unseal the following documents filed provisionally under seal by Plaintiff: Docket Numbers 196-1, 196-2, 196-3, 196-4, and the following documents filed provisionally under seal by Defendants: Docket Numbers 184, 185, 185-1, 204, 204-1, 205, 206, 208, 209, 209-1, 209-3, 209-6, 209-7, and 209-9.  The following documents will remain provisionally under seal pending (1) Plaintiff's opportunity to file excerpted or redacted versions of these documents, (2) the parties' opportunity to clarify whether the correct document has been filed as Defendants' Exhibit E on the Court's docket, and (3) Christopher Longo's opportunity to be heard regarding the unsealing of his deposition and its exhibits: Docket Numbers 187, 188, 209-2, 209-4, 196-5, 209-5, 207, 186 and 209-8.  The following documents will be stricken from the Court's docket: Docket Numbers 203-1, 203-2, 203-3, 203-4, 203-5, 203-6, 184-1 and 209-10.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will largely deny Plaintiff's Motion for Leave to File Under Seal Exhibits in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment but will grant the motion insofar as the Court will permit Plaintiff to file a redacted version of its Exhibit 60 (Doc. No. 196-5) and will temporarily retain under seal Defendants' Exhibit E (Doc. No. 209-5) pending the parties' clarification of the nature of the exhibit.  The Court will also permit Plaintiff to file appropriately excerpted (but unredacted)

---

[9]  In addition, the Court notes that, as pointed out by Defendants, Christopher Longo's emails and texts are also included as exhibits to the deposition of Mark Lauer and therefore filed on the Court's docket as part of that deposition at Docket Numbers 186 and 209-8.  Accordingly, out of an abundance of caution, the Court will also temporarily retain those exhibits under seal.

versions of Defendants' Exhibit B and Exhibit D (Doc. Nos. 188/209-2 and 187/209-4).  In

addition, the Court will afford third-party Christopher Longo the opportunity to be heard before

unsealing his deposition and its exhibits (filed on the Court's docket at Doc. Nos. 207, 186 and

209-8).  The Court will direct the Clerk of Court to unseal certain exhibits provisionally filed

under seal by both parties and to strike certain exhibits from the docket of this matter.  An

appropriate Order follows.


 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania